UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. ANDREW SCOLLICK, | ) ) ) ) |
| Plaintiff-Relator, | ) ) |
| v. | ) )   Case No: 14-cv-01339-RCL |
| VIJAY NARULA, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case was brought by plaintiff-relator Andrew Scollick against eighteen defendants for violations of the False Claims Act ("FCA") in connection with a scheme to obtain certain set-aside government contracts through fraudulent means.  The United States has declined to intervene in this matter.  *See* Notice, ECF No. 6.  The following defendants have moved to dismiss for failure to state a claim: Hudson Insurance Co., Hanover Insurance Co., Centennial Surety Associates, Inc., Michael Schendel, Ajay K. Madan, Vijay Narula, Optimal Solutions and Technologies, Inc. ("OST"), CB Construction Group, Inc. ("CB"), Dilip Parekh, Shobha N. Mehta, Melvin G. Goodweather, Citibuilders Solutions Group, and Guatam Chitnis.  Defendants Amar Gogia, Centurion Solutions Group, LLC ("CSG"), and Neil Parekh have not moved to dismiss.[1]  They have filed answers to plaintiff-relator's Complaint.  *See* Defs. Gogia and CSG's Answer, ECF No. 63; Def. Parekh's Answer, ECF No. 103.  Plaintiff-relator, with the consent of the U.S. government

---

[1] The Court, finding that it is "patently obvious" that plaintiff-relator cannot prevail on Count III—reverse false claims—against any of the defendants, will *sua sponte* dismiss Count III against defendants CSG, Neil Parekh, and Gogia.  *See infra* Note 3.

[110, 113], filed a notice of voluntary dismissal [112] with respect to defendants KCGI, Guatam Chitnis, and Anita Chitnis.   Accordingly, no analysis of defendant Guatam Chitnis' motion to dismiss, ECF No. 108, is necessary because he has been voluntarily dismissed from this action.

All of the foregoing motions to dismiss were granted by this Court's Order of September 30, 2016, ECF No. 122.   The Court finds that plaintiff-relator has failed to state claims against defendants Hudson Insurance Co., Hanover Insurance Co., Centennial Surety Associates, Inc., Michael Schendel, CB Construction, Dilip Parekh, Shobha N. Mehta, Melvin G. Goodweather, and OST and has granted their motions to dismiss.   Upon further review, the Court has determined that plaintiff-relator has stated claims against defendants Citibuilders, Ajay K. Madan, and Vijay Narula for certain FCA violations—presenting false claims in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Counts I, II, IV).   The Court will accordingly vacate its prior Order granting the defendants' motions to dismiss as to these three defendants and will grant in part and deny in part defendants Citibuilders, Madan, and Narula's motions to dismiss.

In sum, Counts I, II, and IV remain pending against defendants Citibuilders, Madan, Narula, CSG, Neil Parekh, and Gogia.

## II.   BACKGROUND

The factual allegations in this case center around an alleged scheme to defraud the United States government by submitting bids to obtain government construction contracts.   Plaintiff-relator claims that the defendants participated in this scheme by fraudulently claiming or obtaining service-disabled veteran-owned small business ("SDVOSB") status, HUBZone status, or section 8(a) status for certain companies to bid on and obtain set-aside contracts, when in fact the bidders did not qualify for the statuses claimed.   Plaintiff-relator alleges that defendants, as part of this

scheme, falsely certified these statuses, made false claims regarding past performance, hid certain aspects of the management and control of the companies at issue, and hid or falsified certain information regarding the employees of the companies at issue.

The central actors in this scheme are Neil Parekh, Ajay K. Madan, Vijay Narula, Centurion Solutions Group ("CSG"), and Citibuilders Solutions Group ("Citibuilders").  Parekh, Narula, and Madan allegedly engaged in conspiracy to defraud the government by bidding on SDVOSB construction contracts although none of them were service disabled veterans.  Accordingly, Parekh, Narula, and Madan established CSG as a "front company" for the purpose of allowing them to bid on and obtain SDVOSB set-aside contracts.  Compl. ¶ 43.  To qualify for SDVOSB status, defendant Gogia—a service disabled veteran—was allegedly falsely identified as a 100% service disabled owner of CSG, although he did not actually exercise control or ownership over CSG.  *Id.* at ¶ 50.  Parekh, Narula, Madan, and Gogia also falsely identified that CSG operated out of a HUBZone when in fact it did not.  *Id.* at ¶ 51.  Plaintiff-relator alleges that CSG then submitted false claims and statements to the government.  *Id.* at ¶¶ 53–85.  Plaintiff-relator claims that the CSG bids contained falsified information regarding past performance, *id.* at ¶¶ 86–106, and false representations concerning CSG's employees, *id.* at ¶¶ 107–115.  Finally, plaintiff-relator claims that CSG obtained millions of dollars in government contracts as a result of this fraudulent scheme, and lists the specific contracts allegedly fraudulently obtained.  *Id.* at ¶ 116.

With regard to Citibuilders, plaintiff-relator alleges that Parekh established Citibuilders to branch out his fraudulent SDVOSB contracting activity.  *Id.* at ¶ 118.  According to the Complaint, Parekh falsely certified Citibuilders as a service-disabled veteran-owned entity—utilizing defendant Goodweather's service-disabled veteran status even though Parekh was the de facto owner and controller of Citibuilders, and misrepresented Citibuilders' past performance and

project personnel. *Id.* at ¶¶ 119–128. Plaintiff-relator claims that Citibuilders obtained millions of dollars in government contracts as a result of this fraudulent scheme, and lists the specific contracts allegedly fraudulently obtained. *Id.* at ¶ 129. Plaintiff-relator claims that the creation of Citibuilders by Parekh caused a rift between himself and Narula and Madan. *Id.* at ¶¶ 131–147. Plaintiff-relator claims that Narula is the alter ego of OST, that Neil Parekh, Dilip Parekh, CB, and Citibuilders are all alter egos of each other, that Narula, Neil Parekh, Madan, OST, and CB are joint-alter egos of CSG, and that Neil Parekh, Goodweather, and Citibuilders are joint alter egos. *Id.* at ¶¶ 29 – 32.

Finally, Plaintiff-relator claims that similar fraud was committed in the name of a third company, KCGI. *Id.* at ¶¶ 166–174. Specifically it alleges that Narula, Parekh, Madan, Guatam Chitnis, and Anita Chitnis schemed to use KCGI to defraud the government by seeking Small Business Administration section 8(a) contracts and/or service disabled contracts. *Id.* at ¶ 166. On December 21, 2015 plaintiff-relator, with the consent of the U.S. government, filed a notice of voluntary dismissal with respect to KCGI, Guatam Chitnis, and Anita Chitnis.

Because of the number of defendants and the various and sometimes disparate allegations against them, the Court will summarize the remaining factual allegations against the rest of the defendants separately.

## A.   OST Defendants: Ajay Madan, Vijay Narula, Optimal Solutions and Technologies ("OST")

OST is a corporation located in Washington, D.C. Compl. ¶ 11. Vijay Narula is the president and CEO of OST. *Id.* at ¶ 15. Ajay K. Madan is the chief operating officer of OST and is a 49% owner of CSG. *Id.* at ¶ 20. Narula is alleged to be the alter ego of OST, and Narula, Madan, and OST are alleged to be (some of) the alter egos of CSG. *Id.* at ¶¶ 29, 31. Regarding OST, the Complaint alleges that CB's business operations were relocated to OST's office, *id.* at ¶

4

42, that CSG's business operations occurred out of OST's headquarters, *id.* at ¶ 51, and that Narula, Madan, and Parekh prepared CSG bid proposals while working out of OST's office space, *id.* at ¶¶ 67, 84.  It alleges that OST never qualified for SDVOSB or HUBZone status and was not a small business enterprise.  *Id.* at ¶ 45–47.  The Complaint further alleges that CSG's bid proposals "include[d] statements pertaining to work alleged to have been completed at defendant OST's corporate headquarters . . . [but] CSG never performed any such construction activity."  *Id.* at ¶ 102.  Narula allegedly "would personally provide past performance survey responses [regarding the OST project] to the government."  *Id.*

Factual allegations regarding defendants Narula and Madan are interspersed throughout the Complaint, which paints them as having a central role in the scheme.  In sum, plaintiff-relator claims that Narula and Madan, along with Neil Parekh, were involved in the creation of CSG for the purpose of submitting fraudulent bids on certain government contracts, that Parekh, Narula, and/or Madan had control over and ownership of CSG, that they prepared the CSG bid proposals and decided the content, and that Gogia was subservient to them.  Plaintiff-relator then describes Narula and Madan's reaction to the formation of Citibuilders—that it caused a rift among the three defendants.  *Id.* at ¶ 131.  He also discusses several communications between the defendants regarding the following: the transfer of funds, payroll and payment disputes, CSG's projects and profits, the separation of CB and CSG, the distribution of surplus CSG income between Parekh, Madan, and Narula, and the financial needs of CSG, OST, and CB.  *Id.* at ¶¶ 133–47.  Finally, plaintiff-relator alleges that Narula executed a corporate resolution for Hudson and Hanover

acknowledging that OST, CSG, and CB shared common ownership, and the OST bonding agreement securing the CSG bonding included personal indemnity of Narula. *Id.* at 160–61.[2]

### B.    Dilip Parekh and CB Construction

CB Construction is a company owned by Neil and Dilip Parekh. *Id.* at ¶ 12. Dilip Parekh is the father of Neil Parekh and a 55% owner of CB Construction. *Id.* at ¶ 17. He is alleged to be an alter ego of Neil Parekh, CB Construction, and Citibuilders. *Id.* at ¶ 30. CB is alleged to be an alter ego of Neil Parekh, Dilip Parekh, and Citibuilders, as well as an alter ego of CSG. *Id.* at ¶¶ 30–31. CB does not qualify as a service-disabled veteran-owned business. *Id.* at ¶ 48. In 2010, CB's business operations were relocated to OST's corporate office. *Id.* at ¶ 42. Many of the factual allegations in the Complaint surrounding CB are related to its relationship with CSG. It alleges that Neil Parekh transferred money from the CSG checking account into the CB checking account which was controlled by Neil and Dilip Parekh. *Id.* at ¶¶ 70, 78. It alleges that the day to day management and oversight of CSG's SDVOSB construction contracts was performed in part by CB. *Id.* at ¶ 72. It alleges that CSG used credit cards issued to CB to conduct CSG business, that the primary cardholder on the CB account was Dilip Parekh, and that the CB cards used to conduct CSG business were in part issued in the name of Dilip Parekh. *Id.* at ¶ 79. It alleges that a credit card issued to Dilip Parekh was used to bill CSG costs, and a card in the name of CB was used to conduct CSG business. *Id.* at ¶ 80. Regarding CB only, the Complaint alleges that the CSG bids falsely claimed that CSG employed individuals who were actually employed by CB. *Id.* at ¶¶ 113–14. It also discusses apparent payments from CSG to CB. *Id.* at ¶¶ 133–35. Regarding Dilip Parekh only, it alleges that domination and control of Citibuilders was in the hands on Neil

---

[2] OST, Narula, and Madan are also mentioned in the section of the Complaint regarding fraud in the name of KCGI. Since plaintiff-relator has voluntarily dismissed his claims against KCGI, the Court will not address those allegations.

and Dilip Parekh, not defendant Goodweather, and that government contracting funds awarded to Citibuilders were funneled into accounts controlled by Neil and/or Dilip Parekh.  *Id.* at ¶¶ 122, 127.

### C.  Melvin G. Goodweather

Defendant Goodweather is a service disabled veteran allegedly falsely identified as the sole owner and CEO of Citibuilders, although he was subservient to Neil Parekh.  *Id.* at ¶ 19.  He is alleged to be an alter ego of Neil Parekh and Citibuilders.  *Id.* at ¶ 32.  The Complaint claims that Parekh utilized Goodweather's service disabled veteran status to establish Citibuilders as a SDVOSB entity, but that Citibuilders was under the direct control of Parekh who was the de facto owner.  *Id.* at ¶ 119, 122–126.

### D.  Shobha N. Mehta, MD

Dr. Mehta is the aunt of Neil Parekh.  *Id.* at ¶ 21.  The Complaint alleges that, as part of the scheme, the defendants falsified past performances of CSG.  Specifically, it claims that defendants used a renovation project at Dr. Mehta's office as a credential of past performance that was necessary to bid and win contracts for medical centers.  *Id.* at ¶¶ 96–97.  Plaintiff-relator alleges that Dr. Mehta's office was never renovated and that "[t]he defendants manufactured the Mehta Project and cut and pasted reference to the Mehta Project in various solicitations and bid proposals with differing size and costs of that project to fit the particular contract requirements under bid."  *Id.* at ¶¶ 99–100.  He claims that the defendants conspired with Dr. Mehta to allow them to identify her office as an example of CSG's past performance and that Dr. Mehta "would provide past performance survey information to the government falsely attesting to work CSG never performed."  *Id.* at ¶ 105.

E.     **The Insurance Defendants: Centennial Surety Associates, Michael Schendel, Hudson Insurance Co., Hanover Insurance Co.**

Plaintiff-relator has also brought claims against several insurance related entities and one individual: Centennial Surety Associates, Michael Schendel, Hudson Insurance Co., and Hanover Insurance Co. (the "insurance defendants").   Under the Miller Act, contractors bidding for government construction contracts are required to post bid bonds, performance bonds, and payment bonds, and the bid bond company is required to ensure that the contractor will perform the work.  *Id.* at ¶ 148.  Centennial is an insurance broker, Schendel is the president of Centennial, and Hudson and Hanover are insurance companies that provided surety bonds to the defendants. *Id.* at ¶¶ 22–25.

The bid proposals submitted here were dependent upon the issuance of surety bonds and performance bonds by Centennial, "as the agent and attorney-in-fact for Hudson Insurance Company and Hanover Insurance Company."  *Id.* at ¶ 151.  Plaintiff-relator claims that Centennial and Schendel were the lawful agents of and attorneys-in-fact for Hanover and Hudson and that Schendel was responsible for causing Hudson and Hanover to issue bid and performance bonds to CSG and Citibuilders.  *Id.* at ¶¶ 152–53.  Plaintiff-relator claims that Schendel had a long-standing relationship with Neil Parekh and that Centennial knew that OST, CSG, and CB Construction shared a single office and that Parekh and Narula were in functional control of CSG.  *Id.* at ¶¶ 154–55.

Plaintiff-relator alleges that the contracts at issue required Citibuilders and CSG to obtain bid bonds and performance bonds, without which the fraudulent activity could not be carried out. *Id.* at ¶ 156.  He claims that Schendel and Centennial knew the details of the bid proposals submitted by OST, CSG, and CB.  *Id.* at ¶ 158.  He also claims that Hudson and Hanover "by and through its agent and attorneys-in-fact Centennial" understood that OST, CSG, and CB shared

8

common ownership, requiring Narula, Parekh, and Gogia to execute corporate resolutions acknowledging this fact. *Id.* at ¶ 160.  In addition, Schendel and Centennial allegedly "understood that Parekh, Narula, and Madan had ownership interests in CSG and deliberately disregarded this fact when issuing bonds in connections with the false certifications contained in the bidding proposals submitted to the government." *Id.* at ¶ 163.  Finally, the Complaint alleges that Hudson and Hanover knew that bonds were required for the contracts at issue and "[b]ut for Defendant Schendel, Centennial Surety Associates, Inc., acting as agents and attorney-in fact to Hudson Insurance Company and Hanover Insurance Company for the purpose of issuing bid bonds and performance bonds, the fraudulent bid submissions made by CSG and Citibuilders would not have been awarded." *Id.* at ¶¶ 164–65.

## III.   Legal Standard

### A.   Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).  When considering a motion to dismiss under Rule 12(b)(6), "the court must assume 'all the allegations in the complaint are true (even if doubtful in fact),' and the court must give the plaintiff 'the benefit of all reasonable inferences derived from the facts alleged.'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal citations omitted).

9

Federal Rule of Civil Procedure 9(b) applies to FCA actions.  *United States v. Toyobo Co., Ltd.*, 811 F. Supp. 2d 37, 44 (D.D.C. 2011) (citing *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002)).  An FCA plaintiff "must state with particularity the circumstances surrounding the defendants' allegedly false claims, as required by Rule 9(b) of the Federal Rules of Civil Procedure." *Totten*, 286 F.3d at 544. The "time, place, and contents of the *false* representations" must be pleaded with specificity, as these are the "*element[s]* of fraud about which the rule is chiefly concerned." *Id.*  "[A]n FCA plaintiff must identify the 'who, what, when, where, and how of the alleged fraud.'" *United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 153 (D.D.C. 2011).  In sum, "[c]ombining Rules 8 and 9(b), we require that 'the pleader . . . state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," and that he "identify individuals allegedly involved in the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)

### B.   Elements of FCA Claims

Plaintiff here has alleged four causes of action against all defendants: (1) submitting or causing to be submitted false or fraudulent claims to the United States in violation of 31 U.S.C. § 3729(a)(1)(A) (presentment claims); (2) making or causing to be made or used false statements or records material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B) (false statement claims); knowingly avoiding or decreasing obligations to the United States in violation of 31 U.S.C. § 3729(a)(1)(G) (reverse false claims); and (4) conspiracy to violate the FCA in violation of 31 U.S.C. § 3729(a)(1)(C).

The elements of presentment claims are as follows: "(1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 91 (D.D.C. 2014) (internal quotation

marks omitted).   The elements of a false statement claim are nearly the same as those for a presentment claim, with the exception that a false statement claim "requires evidence that the defendant made a false *statement* to the government, as opposed to the submission of a false claim for payment."  *Id.* at 87.  Defendants must make these claims or statements "knowingly," that is, "by (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard."  *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008).

A reverse false claim occurs when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G). In contrast to the claims described above, "[a] reverse false claim is any fraudulent conduct that 'results in no payment to the government when a payment is obligated.'"  *Pencheng Si*, 71 F. Supp. 3d at 88.  "Whereas a traditional false claim action involves a false or fraudulent statement made to the government to support a claim for money from the government, a typical reverse false claim action involves a defendant knowingly making a false statement in order to avoid having to pay the government when payment is otherwise due."  *Id.*

Finally, to state a claim for conspiracy under the FCA, the plaintiff-relator must allege "(1) that 'an agreement existed to have false or fraudulent claims allowed or paid' to the government, (2) that each alleged member of the conspiracy 'joined that agreement,' and (3) that 'one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy.'"  *Id.* at 89 (quoting *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010)).  An action for conspiracy cannot exist absent underlying tortious

conduct, and therefore "there can be no liability for conspiracy where there is no underlying violation of the FCA." *Id.*

## IV.    APPLICATION

Plaintiff-relator largely fails to state claims against the defendants who have filed motions to dismiss.   Plaintiff-relator fails to state a claim for reverse FCA violations (31 U.S.C. § 3729(a)(1)(G)) against any of the defendants.   It also fails to state claims against defendants Hudson, Hanover, Centennial, Schendel, CB Construction, Dilip Parekh, Mehta, Goodweather, and OST for presenting false claims in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Counts I, II, IV).   However, plaintiff-relator has sufficiently stated claims against defendants Citibuilders, Narula, and Madan for presenting false claims in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Counts I, II, IV).   The Court will first address plaintiff-relator's reliance on the alter ego doctrine, then will address the claims against the defendants.

### A.    Alter Ego Doctrine

Plaintiff-relator's Complaint paints a picture of an intricate and interconnected scheme to defraud the government based on bids and proposals submitted by defendants CSG, Citibuilders, and KCGI.   In an apparent attempt to hold some of the defendants liable for the actions of CSG, Citibuilders, and KCGI, plaintiff-relator alleges that many of the defendants are alter egos of each other and are therefore jointly and severally liable for each other's conduct.   *See* Compl. ¶¶ 29–32.   However, Plaintiff-relator has failed to sufficiently allege facts showing that the alter ego doctrine applies.

12

In certain circumstances—"when the incentive value of limited liability is outweighed by the competing value of basic fairness to parties dealing with the corporation"—courts may pierce the veil of a corporation to hold shareholders individually liable for corporate actions. *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982). Courts must ask the following two questions in determining whether to pierce the corporate veil: "(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?" *Id.* Under the first prong, courts may consider the following factors: the nature of the corporate ownership and control, *i.e.*, whether the corporation is the alter ego of the individual who controls it; failure to maintain corporate records; failure to maintain corporate formalities necessary for the issuance or subscription to stock; commingling of funds or assets; diversion of corporate funds or assets for personal use; and use of the same office by the corporation and by the individuals. *Id.* at 97–99. With regard to the second prong, "[t]he essence of the fairness test is simply that an individual businessman cannot hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." *Id.* at 100. "The equities of reliance on corporate form are generally analyzed in terms of the adequacy of a corporation's capitalization." *I.A.M. Nat. Pension Fund v. Wakefield Indus., Inc.*, No. CIV. A. 82-2187, 1991 WL 511071, at *6 (D.D.C. Oct. 18, 1991); *see also Labadie*, 672 F.2d at 99–100.

Here, plaintiff-relator has failed to sufficiently allege facts showing that the alter ego doctrine applies. With regard to all the alleged alter ego relationships, plaintiff relator states that the defendants "have such a unity of interest and ownership that the individuality of each entity ceased and they functioned as a single entity." Compl. ¶¶ 29–32. This is a legal conclusion insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555. Plaintiff also claims that the

"defendants participated in, controlled, and had an ownership interest in, and control of, various partnerships and/or joint ventures to obtain and profit from government contracts" and that the defendants took profits from these partnerships and joint ventures.  Compl. ¶ 33.  Plaintiff-relator argues that "the specific facts alleged concerning the nature of the ownership and control of CSG, CB, and Citibulders [sic] companies created by Defendants, and the commingling and manipulation of assets and funds of one entity, and the diversion of funds and assets by and for the benefit of other Defendants, as the result of a scheme to defraud the government, satisfy the 'formalities' and 'fairness' test." Pl.'s Opp. To Mots. To Dismiss 22 n.8, ECF No. 111.

There are several issues with this assertion—plaintiff-relator fails to identify the specific factual allegations in the Complaint that show commingling, manipulation, and diversion; the allegations regarding the individuals' relationships with the corporations (*e.g.*, as owner, CEO, or COO) do not appear to indicate a lack of formalities; and plaintiff-relator fails to explain how two individual people can be alter egos of each other.  The dispositive issue, however, is that plaintiff-relator has failed to allege any facts showing that an inequitable result would follow if the corporate veil remains unpierced.  Plaintiff-relator has not alleged that any of the corporations named in the Complaint are undercapitalized or that he would be unable to recover from them if successful in this action.  Claims against both CSG and Citibuilders remain pending in this action.  Plaintiff-relator, in its opposition to the defendants' motions to dismiss, merely stated that he had satisfied the "fairness" test with virtually no explanation.  Therefore, because plaintiff-relator has failed to allege facts showing that an inequitable result would follow if the Court did not pierce the corporate veil and hold the defendants liable for the actions of each other, plaintiff has failed to sufficiently allege that the defendants are alter egos of each other and are jointly and severally liable. To the extent that plaintiff-relator bases any of the following claims against any defendants on their

alleged status as an alter ego of a defendant who is alleged to have submitted a false claim or made a false statement—*e.g.*, CSG—those claims fail and plaintiff-relator has failed to state a cause of action.

**B.     Defendants Hudson, Hanover, Centennial, Schendel, CB Construction, Dilip Parekh, Mehta, and Goodweather**

Plaintiff-relator has failed to state claims against defendants Hudson, Hanover, Centennial, Schendel, CB Construction, Dilip Parekh, Mehta, or Goodweather for any of the alleged FCA violations.

**1.     *Presentment and False Statement Claims***

Plaintiff-relator has failed to state a claim against the above listed defendants for presenting false claims or making false statements.  Under these provisions of the statute, a defendant may be liable for knowingly presenting or causing to be presented a false claim for payment, or for knowingly making or causing to be made a false record or statement material to the false claim. 31 U.S.C. § 3729(a)(1)(A)–(B).   Plaintiff-relator has failed to sufficiently allege that the defendants identified above either directly presented a false claim or made a false statement, or that they caused a false claim to be presented or a false statement to be made.

*a.     Direct Presentment*

None of the defendants at issue are alleged to have directly presented a false claim to the government.  Although the Complaint alleges the conclusory statement that "defendants conspired with one another to knowingly present, and/or cause to be presented false claims to the government related to past performance, employee knowledge and skills, experience, education, hours worked, work completed, business relationships, false certification as to service-disabled veteran status, false certification as to small business status, false certification as to HUBZone status, and ownership and control of Narula and Parekh," Compl. ¶ 34, the only actually presentment was

committed by CSG, Citibuilders, or KCGI in connection with the alleged scheme to bid on and obtain government contracts when they did not have the requisite status to bid on or obtain such contracts.  As the Court has held that plaintiff-relator has failed to sufficiently allege application of the alter ego doctrine, the defendants are not liable under the FCA for the presentments of CSG, Citibuilders, or KCGI.

### b.      Direct False Statements

Regarding direct false statements, the Court similarly finds that plaintiff has failed to show that the defendants directly made false statements to the government.  Again, the false statements alleged to have been made were made by CSG, Citibuilders, or KCGI in the process of submitting bids.  None of the other defendants listed above—with the exception noted below—are alleged to have made false statements or records material to the false or fraudulent claims to the government.

In one instance, plaintiff-relator does allege that an individual defendant did make a false statement to the government apparently not on behalf of CSG, Citibuilders, or KCGI.  He alleges that "Dr. Mehta would provide past performance survey information to the government falsely attesting to work CSG never performed."  Compl. ¶ 105.  This allegation, however, fails to meet the heightened pleading standard under Rule 9(b).  It includes who made the statement and to whom the statement was made, but it does not identify with specificity when these statements were made, how they were made, or what facts were misrepresented.  *See Martin-Baker Aircraft Co.*, 389 F.3d at 1256 (finding that plaintiff failed to satisfy Rule 9(b)'s particularity requirement because the complaint failed to allege a start date of the fraudulent activity and it was unclear what facts were misrepresented).  Although plaintiff-relator, earlier in the Complaint, lists the allegedly false square footage and costs of the Mehta Project, all of these statements were made in either the "CSG technical submission," "the CSG response," or "the CSG proposal."  Compl. ¶ 100.  Thus,

these statements were made by CSG, not Dr. Mehta, and it remains unclear what specific false statements Dr. Mehta herself made.

c.     *Indirect Presentment and False Statements*

Because plaintiff-relator cannot claim that the defendants directly presented false claims or made false statements or records, he rests his claims on the argument that the defendants caused a false claim to be presented or caused a false statement to be made. *See* Pl.'s Opp. 10–13. The FCA provides for liability in those circumstances. To determine whether a defendant who did not actually submit a claim or make a false statement "has 'caused' the submission of a false claim or false statement, a court must look at the degree to which that party was involved in the scheme that results in the actual submission." *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 127 (D.D.C. 2014). Courts should therefore consider whether the plaintiff has alleged that the defendant's conduct was "at least a substantial factor in causing, if not the but-for cause of, submission of false claims." *Toyobo*, 811 F. Supp. 2d at 48 (finding that the causation requirement was satisfied by allegations that the non-submitting defendant, a fiber manufacturer, marketed the fiber to vest manufacturers for use and "induced with the prospect of refunds, rebates, and reimbursements . . . manufacturers and other companies in the [fiber] supply chain to continue producing [fiber-related] products—and selling them to the government—when questions arose" regarding the fiber's suitability). Courts have credited indirect presentment and false statement claims in the following circumstances: "when the non-submitting party takes advantage of an unwitting intermediary, thereby causing that party to submit a false claim;" when "the non-submitter was the driving force behind an allegedly fraudulent scheme;" when "they had agreed to take certain critical actions in furtherance of the fraud;" and when the "non-submitter continued to do business with an entity upon becoming aware that that entity was submitting false claims." *Tran*, 53 F. Supp. 3d at 126–27. Because the FCA "penalizes a person for his own acts, not for

17

the acts of someone else," *United States v. Bornstein*, 423 U.S. 303, 312 (1976), failure to act is insufficient.  "Courts generally require that the defendant affirmatively act in order to impose liability under the FCA, particularly when a plaintiff alleges that the defendant 'caused' the submission of false claims." *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 50 (D.D.C. 2014).

The Court finds that plaintiff-relator has failed to sufficiently allege presentment or false statements claims based on a theory of causation against defendants Mehta, Dilip Parekh, CB Construction, and Goodweather, or against the insurance defendants—Hudson, Hanover, Centennial, and Schendel.

i.     *Defendants Mehta, Dilip Parekh, CB Construction, and Goodweather*

Dr. Mehta, Dilip Parekh, and CB Construction all had relatively minor roles in the alleged scheme.  Dr. Mehta is alleged to have allowed CSG to use false information regarding the renovation of her office in solicitations and bid proposals and to have provided false information to the government regarding this project.  Dilip Parekh is alleged to have "provided resources from his construction company, CB Construction, and allowed his credit card and company bank account to be used to funnel CSG proceeds into his company's account."  Pl.'s Opp. 23.  CB Construction is similarly alleged to have allowed CSG to use its credit card.  In addition, the Complaint alleges that money was transferred from CSG to CB, and that the management and oversight of CSG's SDVOSB construction contracts was performed in part by CB.  Finally, defendant Goodweather is alleged to be the service disabled veteran who was falsely identified as the owner of Citibuilders, when in fact he never controlled Citibuilders, which was under the control of defendant Parekh.

This conduct, although allegedly part of the larger scheme, does not rise to being a substantial factor in the submission of false claims, and is certainly not the "but for" cause of the submission of the claims.   The other defendants did not need Dr. Mehta, Dilip Parekh, or CB Construction to take the actions they are alleged to have taken in order to accomplish their alleged goal of submitting false claims and making false statements to the government.   The facts alleged against defendant Goodweather also do not support the inference that he caused the submission of claims or the making of false statements.   For example, nothing in the Complaint indicates that defendant Goodweather asked or directed defendant Parekh to make the claims or statements, that he prepared such claims or statements, or that he otherwise had any role in the submission of claims or statements.   Defendant Goodweather is not alleged to have affirmatively acted in any way that would cause the submission of the false claims or statements.   *See Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d at 50.   The Court finds that plaintiff-relator has failed to allege that the roles played by these defendants were a substantial factor in causing the submission of false claims or statements—at most they played periphery roles in the alleged scheme.   *See Toyobo*, 811 F. Supp. 2d at 48.   Therefore, plaintiff-relator has failed to state a claim for relief under 31 U.S.C. § 3729(a)(1)(A) (Count I) or 31 U.S.C. § 3729(a)(1)(B) (Count II) against defendants Mehta, Dilip Parekh, CB Construction, and Goodweather.

### ii.    *Insurance Defendants*

The Complaint also does not show that the insurance defendants caused any of the other defendants to submit false claims or make false statements.   While it is true that bonding is a necessary step in bidding for government construction contracts, this does not mean that the issuance of bonds caused the submission of false claims or statements.   None of the insurance defendants played roles similar to those identified above where courts have found that plaintiffs have pled indirect presentment or false statement claims.   First, they did not take advantage of

unwitting submitters (CSG, Citibuilders, and KCGI).  *Cf. United States v. Honeywell Int'l Inc.*, 798 F. Supp. 2d 12, 24 (D.D.C. 2011) ("[A] subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the government to pay its claim.").  Second, the Complaint clearly alleges that CSG, Citibuilders, and KCGI, as well as the Parekh, Narula, and Madan, were the driving forces behind the scheme—the insurance defendants did not envision the scheme or push the other defendants to enact it.  *Cf. Toyobo*, 811 F. Supp. 2d at 48 (finding that plaintiff alleged cause of action against non-submitter who induced submitters to continue manufacturing and selling to the government the non-submitter's product).

Third, although bonding was a necessary step in submitting the bids at issue, no facts are alleged that would allow the inference that the insurance defendants agreed to bonding in furtherance of the fraud alleged.  The Complaint merely alleges that Centennial knew that OST, CSG, and CB shared an office, that Parekh and Narula were in functional control of CSG, that Parekh, Narula, and Madan had ownership interests in CSG and disregarded this fact, that Schendel had a relationship with Parekh, and that Schendel and Centennial knew of the details of each bid proposal submitted by OST, CSG, and CB.  It also alleges that Hudson and Hanover knew that OST, CSG, and CB shared common ownership and therefore required Narula, Parekh, and Gogia to execute corporate resolutions acknowledging this fact, and that they knew that surety bid bonds were required.  None of these allegation show that the insurance defendants were acting in furtherance of fraud; the Complaint does not even allege that the insurance defendants had an interest in the scheme's success.  *Cf. U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 715 (10th Cir. 2006) (finding that plaintiff adequately alleged a "causing to

be presented claim" by alleging that the non-submitter "'agree[d] to circumvent' contractual and statutory requirements, and 'assur[ed]'" a laboratory that it would continue to accept false claims).

Finally, there is no allegation that the insurance defendants continued to do business with the other defendants upon becoming aware that the other defendants were submitting false claims. The allegation that the insurance defendants knew the contents of the bid proposals does not mean the insurance defendants knew the content included false claims. *Cf. United States v. President & Fellows of Harvard Coll.*, 323 F.Supp.2d 151, 187 (D. Mass. 2004) ("Where a defendant has an ongoing business relationship with a repeated false claimant, and the defendant knows of the false claims, yet does not cease doing business with the claimant or disclose the false claims to the United States, the defendant's ostrich-like behavior itself becomes a course of conduct that allowed fraudulent claims to be presented to the government." (internal quotation marks and citations omitted)). Therefore, plaintiff-relator has failed to state a claim for relief under 31 U.S.C. § 3729(a)(1)(A) (Count I) or 31 U.S.C. § 3729(a)(1)(B) (Count II) against defendants Hudson, Hanover, Centennial, and Schendel.

## 2. *Reverse False Claims*

Plaintiff-relator has also failed to state a claim for reverse false claims. Reverse false claims occur when "the defendant's alleged deception 'results in no payment to the government when a payment *is obligated*.'" *Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008). In contrast to typical false claims actions, "a typical reverse false claim action involves a defendant knowingly making a false statement in order to avoid having to pay the government when payment is otherwise due." *Pencheng Si*, 71 F. Supp. 3d at 88. A reverse false claim may not rest, however, on the argument "that an obligation arose out of Defendants' concealment of their allegedly fraudulent activity," because "by this logic, just about any traditional false statement or presentment action would give rise to a reverse false claim action; after all, presumably any false

21

statement actionable under sections 3729(a)(1)(A) or 3729(a)(1)(B) could theoretically trigger an obligation to repay the fraudulently obtained money." *Id.* at 97.

Plaintiff-relator alleges that reverse FCA violations occurred because "(a) Defendants Centennial Surety Associates, Inc., Michael Schendel, Hudson Insurance Co. and Hanover Insurance Co. [*i.e.*, the insurance defendants] have knowingly concealed, and knowingly and improperly avoided or decreased their obligation to pay money to the government as a result of their roles facilitating the fraudulent scheme and by knowingly assisting other Defendants in defrauding the government; and (b) when all Defendants knowingly retained government funds that [they] knew were obtained as a result of the contracting fraud." Pl.'s Opp. 38–39.  He argues that the insurance defendants had a duty to review the bids and ensure that CSG, CB, and Citibuilders would perform the contract, but that they knew that the bid proposals were fraudulent and issued bonds anyway, when they had a duty to deny issuance of the bonds.  *Id.* at 39.  He argues that the insurance defendants "also knowingly and improperly avoided or decreased their obligations to pay the government the full amount of the bonds for each government contract that was fraudulently bid or performed by the other Defendants." *Id.* at 40.  Regarding the rest of the defendants, plaintiff-relator argues that all those "who received government funds or benefits under the contracts at issue have committed 'reverse' FCA violations by retaining government funds that were fraudulently obtained and are, therefore, overpayments," and they have an obligation to repay funds or benefits obtained as a result of the fraud.  *Id.*

Plaintiff-relator's arguments with regard to the insurance defendants fail to state a claim for reverse FCA violations.  The allegation that the insurance defendants should have denied issuance of the surety bonds does not equate to an allegation that the defendants actually owed any payment to the government in connection with the bonds.  Moreover, the Complaint contains no

allegations that the insurance defendants knew the bids were fraudulent—it merely states that they knew the details of the bid proposals and that Parekh, Narula, and Madan had ownership interests in CSG.  Furthermore, although the Complaint states that under the Miller Act, bid bond companies are required to ensure that the contractor will undertake the contract, that the contractor will complete the project in accordance with the specifications, and will ensure that those who furnish labor and materials will be paid, there are no allegations that any of those actions were not taken here.  The Complaint does not state with any particularity what obligations were owed by which insurance defendants, and how such obligations were avoided or decreased.  *Cf. Pencheng Si*, 71 F. Supp. 3d at 96 ("In addition to failing to provide any details about the source of the alleged obligation, Relator also fails to specify the *parameters* of that obligation, such as what triggers the duty to repay and what sort of repayment it requires.").  There is simply no allegation in the Complaint that the insurance defendants had an obligation to pay the government the full amount of the bonds.  *See id.* at 97–98 ("Relator cannot now claim that there is a general obligation to repay all instances of misuse of grant funds when the amended complaint does not state as much.").

Plaintiff-relator also fails to state a claim for reverse false claims with respect to the rest of the defendants.  His argument that those who benefitted from the fraudulently obtained contracts had an obligation to repay those funds is the same as that which was rejected in *Pencheng Si*, where the relator "attempt[ed] to argue that an obligation arose out of Defendants' concealment of their allegedly fraudulent activity."  *Id.* at 97.  Like the court in *Pencheng Si*, this Court finds that the fraudulent actions alleged here do not trigger an obligation to repay the fraudulently obtained money.  *See id.*  Therefore, plaintiff-relator has failed to state a claim for reverse false claims under 31 U.S.C. § 3279(a)(1)(G) (Count III).[3]

---

[3] Based on the Court's reasoning above, it also finds that it is "patently obvious" that plaintiff-relator cannot prevail on its reverse false claims count against any of the defendants, including those who have not moved to dismiss.  *See*

### 3.    *Conspiracy*

Plaintiff has failed to state a claim for conspiracy.  There can be no conspiracy when there is no underlying FCA violation.  *Pencheng Si*, 71 F. Supp. 3d at 89.  As the Court has found that plaintiff-relator failed to state claims under the FCA for the presentment of false claims, for making false statements, and for reverse false claims, these allegations cannot qualify as the underlying tortious act necessary for a conspiracy to exist.  Therefore, plaintiff-relator has failed to state a claim for conspiracy under 31 U.S.C. § 3279(a)(1)(C) (Count IV).

### C.    **Defendant Citibuilders**

Defendant Citibuilders is one of three companies (along with CSG and KCGI) at the center of the alleged scheme to defraud the government through bidding and fraudulently obtaining SDOVSB government contracts.  According to the Complaint, defendant Neil Parekh created Citibuilders and used defendant Goodweather's service-disabled veteran status to establish Citibuilders as an SDVOSB entity, and then "utilized Citibuilders as the vehicle to obtain SDVOSB set-aside contracts by falsely certifying Citibuilders as a service-disabled veteran-owned entity, and by materially misrepresenting Citibuilders' past performance and project personnel that were necessary to qualify for the contract award."  Compl. ¶ 120.

Plaintiff-relator has sufficiently stated claims for the presentment of false claims, making false statements, and conspiracy in violation of the FCA, but has failed to state a claim for reverse false claims.

### 1.    *Presentment and False Statements*

The court first finds that plaintiff-relator has sufficiently stated a claim against defendant Citibuilders for the presentment of false claims and the making of false statements.  Citibuilders

---

*Fields v. Bellamy*, No. 93-52741994 WL 549470, at *1 (D.C. Cir. Sept. 14, 1994).  Therefore, the Court will *sua sponte* dismiss Count III against defendants CSG, Neil Parekh, and Gogia.

argues that the allegations against it are conclusory and devoid of the necessary specificity under Rule 9(b).  Def. Citibuilders' Mot. Dismiss 4–5, ECF No. 105.  It argues that the Complaint "fails to allege the time place, and content of each false certification or to whom the false certification was made," and that it "fails to allege the time, place, content, and recipient of the misrepresentation.  *Id.*  Construing the facts in favor of the plaintiff-relator, however, the Court finds that the Complaint does in fact allege the time, place, content, and recipients of the false certifications and misrepresentations.   The Complaint, after explaining the formation of Citibuilders and the alleged use of defendant Goodweather's service disabled veteran status, alleges that the Citibuilders proposals are "cookie cutter" versions of the CSG proposals, just issued in the name of Citibuilders instead of CSG.  Compl. ¶ 120; *see also* Pl.'s Opp. 9 ("Parekh prepared 'cookie cutter' versions of the exact same proposals that were being prepared in the name of CSG.").  A reasonable inference construed in favor of plaintiff-relator is that the content of the Citibuilders proposals was identical to the content of the CSG proposals, which are described earlier in the Complaint.  *See, e.g.*, Compl. ¶ 68 (describing false statements made in the CSG proposals); ¶¶ 86–106 (describing the falsification of CSG's past performance); ¶¶ 107–115 (describing false representations concerning CSG's employees).

The Complaint then lists the false statements made by Parekh in connection with the submission of Citibuilders' solicitations.  Compl. ¶ 121.   Finally, the Complaint lists nine of the specific contracts allegedly fraudulently awarded to Citibuilders between 2010 and 2014.  *Id.* at ¶ 129.  It includes the department or agency to whom the contract was submitted, a description of the contract, the date the contract was awarded, and the program source number, the solicitation number, or the contract number.  *Id.*  This information is enough to satisfy the particular pleading requirements of Rule 9(b)—plaintiff-relator may not have "allege[d] every fact pertaining to every

instance of fraud," but, on the basis of the facts alleged, Citibuilders is "able to 'defend against the charge and not just deny that they have done anything wrong.'" *Martin-Baker Aircraft Co.*, 389 F.3d at 1259.  Therefore plaintiff-relator has sufficiently stated a plausible claim for relief against Citibuilders for the presentment of false claims and for making false statements in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I) and 31 U.S.C. § 3729(a)(1)(B) (Count II).

### 2. *Reverse False Claims*

Plaintiff-relator has not, however, stated a plausible claim for relief for reverse false claims. Plaintiff-relator rests its reverse false claims argument on the assertion that the defendants retained government funds that they knew were obtained as a result of fraud—ostensibly, the contract profits.  As explained above, plaintiff-relator may not argue that an obligation to pay the government arose solely of the concealment of fraudulent activity. *See Pencheng Si*, 71 F. Supp. 3d at 97 ("[I]f the conduct that gives rise to a traditional presentment or false statement action also satisfies the demands of section 3729(a)(1)(G), then there would be nothing 'reverse' about an action brought under that latter section of the FCA.").  Therefore, plaintiff-relator has failed to state a claim under 31 U.S.C. § 3729(a)(1)(G) (Count III).

### 3. *Conspiracy*

Defendant Citibuilders argues that the conspiracy count against it should be dismissed on the basis of the intracorporate conspiracy doctrine, pursuant to which "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees." *Kelley v. D.C.*, 893 F. Supp. 2d 115, 119–20 (D.D.C. 2012) (internal quotation marks omitted).  It argues that Citibuilders is only alleged to have acted through its officer/employee Neil Parekh and that Citibuilders cannot conspire with Parekh.  Def. Citibuilders' Mot. Dismiss 3–4.  Plaintiff-relator responds that the conspiracy commenced prior to the formation of Citibuilders and that the conspiracy extended to

non-Citibuilders employees, so the intracorporate conspiracy doctrine does not apply.  Pl.'s Opp. 25.

The Court finds that defendant Citibuilders' reliance on the intracorporate conspiracy doctrine is unavailing.  As plaintiff-relator argues, all of the defendants are alleged to have participated in the conspiracy, not just Neil Parekh and Citibuilders.  For example, CSG—a separate entity from Citibuilders—as well as defendants Narula and Madan are at the center of the alleged scheme here and are alleged to have participated in the conspiracy.  In addition, "the intracorporate conspiracy doctrine only applies if the individual defendants were acting within the scope of their shared employment."  *Kelley*, 893 F. Supp. 2d at 120.  Neil Parekh is alleged to have committed acts apparently outside the scope of his Citibuilders employment in furtherance of the alleged scheme, for example in his capacity as an officer of CSG.  Therefore, defendant Citibuilders' intracorporate conspiracy doctrine argument is misplaced and plaintiff-relator has stated a claim for conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Count IV).

### D.    OST Defendants

The Complaint shows that the OST defendants—OST, Narula, and Madan—had varying levels of involvement in the alleged scheme.  As summarized above, Narula and Madan are officers of OST.  The Complaint alleges that CB and CSG, as well as Narula, Madan, and Parekh, worked and operated out of OST's office space, and that CSG's bid proposals included false information regarding work completed at OST's headquarters.  Narula and Madan were involved in the creation of CSG with defendant Parekh and were involved in the submission of CSG bid proposals—which allegedly contained false and fraudulent information.  Based on the facts alleged in the Complaint, plaintiff-relator has failed to state a claim against defendant OST for any of the alleged FCA violations, and has failed to state a claim for reverse false claims against defendants Narula and

Madan, but he has sufficiently stated a claim for relief against defendants Narula and Madan for the presentment of false claims, for making false statements, and for conspiracy.

### 1.     *Presentment and False Statements*

Plaintiff has stated a claim against defendants Narula and Madan for the presentment of false claims and the making of false statements, but has failed to state a claim against defendant OST.  First, it is important to note that none of the defendants are alleged to have directly presented false claims or made false statements to the government—all claims presented and statements made were in the name of CSG, Citibuilders, or KCGI.[4]  Therefore, plaintiff-relator's claims rest on the argument that the defendants caused a false claim to be presented or caused a false statement to be made.  *See* Pl.'s Opp. 10–13.  The Court must therefore look at the degree of involvement of each defendant in the scheme, considering whether the plaintiff has alleged that the defendant's conduct was "at least a substantial factor in causing, if not the but-for cause of, submission of false claims."  *Toyobo*, 811 F. Supp. 2d at 48; *Tran*, 53 F. Supp. 3d at 127.

The Complaint fails to allege any facts showing that OST's conduct (as an entity) was a substantial factor in causing the submission of fraudulent claims or in making false statements.  OST's role was limited to the following: CSG relocated its business to OST's offices, out of which Parekh, Narula, and Madan worked, Compl. ¶ 84; OST staff employees supported Parekh, Narula, and Madan in the preparation of bids and proposals submitted in the name of CSG, *id.* at ¶ 68; and CSG's responses to solicitations included false statements pertaining to work alleged to have

---

[4] Although plaintiff-relator states "Narula would personally provide past performance survey responses to the government," this statement is included in a paragraph that starts with the assertion that "[t]he CSG response to solicitations and bid proposals also include material false statements pertaining to work alleged to have been completed at defendant OST's corporate headquarters."  Compl. ¶ 102.  The statements made by Narula appear to have been on behalf of CSG.

completed at OST's headquarters, *id.* at ¶ 102.  Nothing indicates that OST was so involved in the scheme so as to have effectively caused the submission of claims or false statements.

The Complaint does sufficiently allege, however, that the roles played by Narula and Madan were substantial factors in causing the submission of false claims and false statements.  It states that Parekh, Narula, and Madan established CSG as a front company for the purpose of allowing them to bid on and obtain SDVOSB set-aside contracts, that they established CSG with the intent to falsely identify it as SDVOSB by falsely identifying Gogia as the owner, and that they falsely identified that CSG operated out of a HUBZone.  Compl. ¶¶ 43, 50, 51.  It also alleges that Parekh, Narula, and Madan "controlled the likeness of Gogia's signature which they affix[ed] to documents to their liking," that they "were directly responsible for preparing all of the CSG bid proposals transmitted to the government," and that they determined the content of the proposals and when and what contracts would be solicited.  *Id.* at ¶¶ 65–67.  It also alleges in various places that CSG was under the control of Parekh, Narula, and Madan and that Gogia—the purported owner of CSG—was subservient to them and under their control, and provides examples evidencing such control.  *Id.* at ¶¶ 74–77.  The Complaint then goes on to describe in detail the false and fraudulent contents of the bid proposals, which Parekh, Narula, and Madan are alleged to have prepared, and lists the specific contracts awarded as a result.  *Id.* at ¶¶ 86–116.

*United States ex rel. Tran v. Computer Sciences Corp.* is instructive.  In *Tran* the court found that the defendant's (Modis) "participation in the scheme was sufficient to constitute a 'substantial factor in causing' CSC's submission of the false claims.'"  *Tran*, 53 F. Supp. 3d at 128.  In *Tran*, defendant CSC agreed to serve as a prime contractor and to subcontract a certain percentage of work to qualified small businesses.  *Id.* at 109.  Instead, CSC set up a pass-through scheme in which "it would subcontract work to qualified small businesses, such as Defendant

Sagent Partners, LLC ('Sagent'), and as a condition of the subcontract, those small businesses would agree to further subcontract the work to large businesses that CSC trusted, such as Defendant Modis, Inc. ('Modis'), in exchange for a small fee." *Id.* This violated the FCA because "it permitted CSC to report to the government that the company had met its small business subcontracting goals when, in reality, large businesses were performing the substantive work under the contract." *Id.* The court found that the complaint was "replete with allegations regarding Modis's role in the pass-through scheme, such that there is no doubt that Modis was fully aware of, and an active participant in, the arrangement that facilitated CSC's eventual submission of allegedly false claims and false statements." *Id.* at 128. It specifically found that allegations that Modis's sales director stated "Modis's goal in implementing the pass-through scheme was to 'support [CSC's] needs to increase its small business spend within its subcontract community,' and that he 'worked with other small business vendors . . . to assist CSC in obtaining it small business spend,'" and that he "suggested using [a certain subcontractor] as 'a conduit for Modis in the provision of services to CSC for the purpose of expanding its small business spend.'" *Id.* (internal citations omitted). Thus, the court concluded that "these allegations would be sufficient to establish that Modis was well aware that its actions in implementing the pass-through scheme would cause CSC's eventual submission of allegedly false claims and false statements about its compliance with the small-business subcontracting requirements, and that Modis's actions were in fact a substantial factor in causing those submissions." *Id.*

Similarly here, the Court finds that, based on allegations against Narula and Madan in the Complaint, they were well aware that their actions would result in the submission of false claims by CSG. Narula and Madan are alleged to have actually decided the content of and prepared the false claims themselves. They are alleged to have falsely identified Gogia as the owner of the

company that they formed (with Parekh) for the purpose of fraudulently obtained SDVOSB status, and to have used Gogia's signature on documents.  It is clear that their actions were a substantial factor in, if not the driving force behind, the submission of false claims and the making of false statements to the government in violation of the FCA.  *See Tran*, 53 F. Supp. 3d at 126–27; *Toyobo*, 811 F. Supp. 2d at 48.  Therefore, plaintiff-relator has sufficiently stated a claim against defendants Madan and Narula under 31 U.S.C. § 3729(a)(1)(A) (Count I) and 31 U.S.C. § 3729(a)(1)(B) (Count II), but has failed to state a claim against defendant OST under these provisions.

### 2.    *Reverse False Claims*

Again, however, plaintiff-relator has not stated a plausible claim for relief against any of the OST defendants for reverse false claims.  Like all of the defendants listed above, plaintiff-relator rests its reverse false claims argument against the OST defendants on the assertion that they retained government funds that they knew were obtained as a result of fraud.  This is insufficient to show the existence of an obligation to pay the government and plaintiff-relator has failed to state a claim under 31 U.S.C. § 3729(a)(1)(G) (Count III).  *See Pencheng Si*, 71 F. Supp. 3d at 97.

### 3.    *Conspiracy*

The OST defendants claim that the Complaint fails to allege a conspiracy to violate the FCA because it fails to sufficiently allege the underlying FCA violations.  OST Defs.' Mot. Dismiss 18, ECF No. 86-1.  Because plaintiff-relator has failed to sufficiently claim an underlying FCA violation against defendant OST, plaintiff-relator's claim against OST for conspiracy fails. With respect to defendants Narula and Madan, however, the Court has found that plaintiff-relator sufficiently stated a claim for the presentment of false claims and for making false statements in violation of 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B).  Therefore, because plaintiff-relator has sufficiently stated underlying FCA violations against defendants Narula and

31

Madan, their argument with respect to the conspiracy claim fails and plaintiff-relator has stated a claim for conspiracy against them.

## V.      CONCLUSION

In sum, plaintiff-relator has failed to state a claim against all defendants for reverse false claims in violation of 31 U.S.C. § 3729(a)(1)(G) (Count III).   Plaintiff-relator has also failed to state a claim against defendants Hudson Insurance Co., Hanover Insurance Co., Centennial Surety Associates, Inc., Michael Schendel, CB Construction Group, Inc., Dilip Parekh, Shobha N. Mehta, Melvin G. Goodweather, and OST for presenting false claims in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Counts I, II, IV).   Defendants Hudson Insurance Co., Hanover Insurance Co., Centennial Surety Associates, Inc., Michael Schendel, CB Construction Group, Inc., Dilip Parekh, Shobha N. Mehta, Melvin G. Goodweather, and OST's motions to dismiss have therefore been granted.   Upon further review, the Court finds that plaintiff-relator has, however, sufficiently stated a claim against defendants Citibuilders, Ajay K. Madan, and Vijay Narula for presenting false claims in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C) (Counts I, II, IV).   The Order granting defendant Citibuilders' and defendants Ajay K. Madan and Vijay Narula's motions to dismiss will be vacated and their motions to dismiss will be denied in part.   Defendants KCGI, Anita Chitnis, and Guatam Chitnis will be dismissed from this action in accordance with plaintiff-relator's notice of voluntary dismissal.   Counts I–IV remain pending against defendants CSG, Neil Parekh, and Gogia, and Counts I, II, and IV remain pending against defendants Citibuilders, Madan, and Narula.   A separate order accompanies this memorandum opinion.

Date: October 14, 2016

Royce C. Lamberth
United States District Judge