## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREW SCOLLICK**, <br> *ex. rel.* UNITED STATES OF AMERICA, <br><br>     *Plaintiff*, <br><br> **v.** <br><br> **VIJAY NARULA**, *et al.*, <br><br>     *Defendants*. | Case No. 14-cv-1339 (RCL) |

### MEMORANDUM OPINION

Defendant Dr. Nitin Mehta moves to dismiss the claims against him in plaintiff-relator's Second Amended Complaint for failure to state a claim. ECF No. 316. Upon consideration of the parties' filings, ECF Nos. 316, 316-1, 320, 321, the allegations set forth in the Second Amended Complaint, ECF No. 298, and the relevant legal standards, the Court will **GRANT** Dr. Nitin Mehta's motion to dismiss, ECF No. 316. All claims brought against Dr. Nitin Mehta in the Second Amended Complaint, ECF No. 298, will be **DISMISSED** without prejudice.

### I. BACKGROUND

The Court assumes familiarity with the procedural history and factual allegations of this six-plus-year-old matter as set forth in its prior Memorandum Opinions. *See United States ex. rel. Scollick v. Narula* ("*Scollick I*"), 215 F. Supp. 3d 26 (D.D.C. 2016); *United States ex. rel. Scollick v. Narula* ("*Scollick II*"), No. 14-CV-1339, 2017 WL 3268857 (D.D.C. July 31, 2017); *United States ex. rel. Scollick v. Narula* ("*Scollick III*"), No. 14-CV-1339, 2020 WL 6544734 (D.D.C. Nov. 6, 2020). The Court will thus provide only the background information necessary to contextualize and resolve the present motion.

A. **Procedural History**

Plaintiff-relator originally brought this False Claims Act suit in mid-2014 against eighteen defendants. *Scollick II*, 2017 WL 3268857, at *1. His Complaint alleged that all defendants violated the False Claims Act by (1) knowingly presenting—or causing to be presented—a false or fraudulent claim to the government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A) (the "presentment claim"); (2) knowingly making—or causing to be made or used—false statements or records material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B) (the "false-statement claim"); (3) knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the government in violation of 31 U.S.C. § 3729(a)(1)(G) (the "reverse-false claim"); and (4) conspiring to violate the False Claims Act in violation of 31 U.S.C. § 3729(a)(1)(C) (the "conspiracy claim"). *Id.*

Thirteen defendants moved to dismiss the Complaint for failure to state a claim. *Id.* The Court granted in part and denied in part those motions, leaving only a sliver of the original Complaint intact. *Id.* (citing *Scollick I*, 215 F. Supp. 3d at 47–48). All that remained of the Complaint was the presentment claim (Count I), false-statement claim (Count II), and conspiracy claim (Count IV), against defendants Citibuilders Solutions Group, LLC ("Citibuilders"), Ajay Madan, and Vijay Narula. *Id.*

Plaintiff-relator then moved for leave to amend his Complaint. ECF No. 131. The proposed Amended Complaint omitted several defendants listed in the Complaint and brought the presentment claim, false-statement claim, and conspiracy claim against all remaining defendants. *See* ECF No. 131-1. It also lodged the reverse-false claim at the four "Bonding Defendants": Hudson Insurance Co., Hanover Insurance Co., Centennial Surety Associates, Inc., and Michael Schendel. *Id.*

2

Nine defendants—including Dr. Shobha Mehta—opposed plaintiff-relator's motion to amend, arguing that any amendment would be futile. *Scollick II*, 2017 WL 3268857, at *1. The Court granted in part and denied in part plaintiff-relator's motion. *Id.* at *17. It allowed plaintiff-relator to amend his Complaint to (1) assert the presentment claim against defendants Optimal Solutions and Technologies, Inc. ("OST, Inc."), Melvin Goodweather, and the Bonding Defendants, (2) assert the false-statement claim against defendants Dr. Shobha Mehta, OST, Inc., Melvin Goodweather, and the Bonding Defendants, (3) assert the reverse-false claim against defendants Hudson Insurance Co. and Hanover Insurance Co., and (4) assert the conspiracy claim against defendants OST, Inc., Dr. Shobha Mehta, Melvin Goodweather, and the Bonding Defendants. *Id.* Plaintiff filed his Amended Complaint as permitted by the Court. *See* ECF No. 169, Am. Compl.

During discovery, plaintiff-relator uncovered facts suggesting that Dr. Nitin Mehta—the husband of defendant Dr. Shobha Mehta—also played a role in the alleged fraud scheme. *See* ECF No. 273 at 2. Accordingly, plaintiff-relator sought the Court's leave to file a Second Amended Complaint with newly added allegations against Dr. Nitin Mehta. *See id.* The Court granted plaintiff-relator's request. ECF No. 295. In the Second Amended Complaint, all allegations against existing defendants remain the same as pleaded in the Amended Complaint, except those against Dr. Shobha Mehta. *See* Second Am. Compl., ECF No. 298 Now, some of the allegations against Dr. Shobha Mehta from the Amended Complaint claim that Dr. Shobha Mehta "and/or" Dr. Nitin Mehta took certain actions in furtherance of the fraud. *See id.* ¶¶ 99, 102, 104, 105.

**B. Factual Allegations Against Dr. Nitin Mehta**

Plaintiff-relator's Second Amended Complaint brings the presentment claim, false-statement claim, and conspiracy claim against Dr. Nitin Mehta. Second Am. Compl. ¶¶ 215–40,

245–60.[1] In support of these three causes of action, plaintiff-relator's Second Amended Complaint claims that Dr. Nitin Mehta participated in both conspiracies alleged in this matter: the CSG conspiracy and the Citibuilders conspiracy. The details of those allegations are as follows.

    i.   The CSG Conspiracy

Sometime before April 2010, defendants Neil Parekh, Ajay Madan, Vijay Narula, and Amar Gogia formed a new limited liability company called Centurion Solutions Group ("CSG"). Second Am. Compl. ¶¶ 37, 41. They then registered CSG as a service-disabled, veteran-owned small business ("SDVOSB") for purposes of obtaining set-aside government contracts reserved for SDVOSBs. Id. at ¶ 37. Yet CSG was not run by a service-disabled veteran, as it must be to qualify as an SDVOSB. Id. at ¶¶ 27–28, 34–39.

Once CSG was registered as an SDVOSB, employees of a company run by Madan and Narula (OST, Inc.) prepared and submitted bids in CSG's name for government contracts reserved for SDVOSBs. Id. at ¶¶ 13, 17, 41–49. As part of the bidding process for these set-aside contracts, the Department of Veterans Affairs ("VA") requires prospective contractors to provide information about past performance on construction jobs, including the technical specifications of those jobs. Id. at ¶ 97; see id. at ¶¶ 107, 115. And "[i]f a prospective contractor fail[s] to satisfy the technical require[ments] as to past performance[,] that contractor [is] disqualified from the competition." Id. at ¶ 114. To meet the past-performance criteria in set-aside contract solicitations, CSG included in its solicitation responses information about "work it allegedly performed for Dr. Shobha Mehta and/or Dr. Nitin Mehta." Id. at ¶ 96. Drs. Shobha and Nitin Mehta are the aunt and uncle of Neil Parekh, one of the defendants who founded CSG. Id. at ¶¶ 18–19.

---

[1] Plaintiff-relator does not bring the reverse-false claim (Count III) against Dr. Nitin Mehta. See Second Am. Compl. ¶¶ 241–44 (Count III alleging misconduct only by the "Bonding Defendants"); see ECF No. 320 at 4 n.1 (plaintiff-relator's opposition brief noting that the Second Amended Complaint does not bring Count III against Dr. Nitin Mehta).

Although Dr. Shobha Mehta "is an obstetrician and sole practitioner who practices out of an office" in Alexandria, Virginia, and Dr. Nitin Mehta is a "pediatrician and neonatologist who works at MedStar Georgetown University Hospital and MedStar Montgomery Medical Center," CSG's solicitation responses identified "Dr. Shobha Mehta and/or Dr. Nitin Mehta" as the owner of an entity called "Mehta Medical Group." *Id.* at ¶¶ 18, 19, 96. Depending on the past performance and technical specification requirements for each SDVOSB contract solicitation, the "CSG conspirators would change the cost and the scope" of the construction projects they claimed to have performed for the Mehta Medical Group. *Id.* at ¶ 115. CSG's solicitation responses referred to these jobs as the "Mehta Project" and reported completing construction jobs for the Mehta Project ranging from $235,000 to $1,150,000. *Id.* at ¶¶ 108–12.

In reality, however, CSG did not perform any of these construction jobs. *Id.* at ¶ 115. Nevertheless, for "each VA contract awarded to CSG," "Dr. Shoba Mehta and/or Dr. Nitin Mehta would separately confirm to the VA contracting officer by submitting a completed questionnaire confirming that the construction had taken place and that CSG's performance on that contracting action [was] excellent." *Id.* at ¶ 102, 115. Dr. Nitin Mehta "signed and submitted [these] falsified past performance survey reports to a [sic] FAA contracting officer" beginning around November 2010. *Id.* at ¶ 101. On November 4, 2010, for example, Dr. Nitin Mehta "completed a customer satisfaction survey . . . concerning work done on Dr. Shobha Mehta's medical office and gave CSG a perfect score." *Id.* at ¶ 107. He did so "knowing that this response was false and that doing so would further the fraudulent conspiracy." *Id.* Additionally, "Dr. Shobha Mehta and/or Dr. Nitin Mehta knew that CSG claimed in some of its submissions that the renovations of Dr. Shobha Mehta's office [ ] at 5021 Seminary Road, Alexandria, VA . . . exceeded $1 million dollars." *Id.* at ¶ 105. In reality, however, "[t]hat office location . . . consisted of a single room approximating 200

square feet and had not been renovated since it was originally constructed . . . back in the 1980's." *Id.* Along with submitting these "falsified performance survey reports," Dr. Nitin Mehta also answered phone calls and emails from government contract officers to "verify the false information provided the proposals." *Id.* at ¶ 104.

Both doctors' involvement in the CSG conspiracy continued for "a period of years." *Id.* at ¶ 102. In that time, "Dr. Shobha Mehta and/or Dr. Nitin Mehta routinely returned a customer satisfaction [survey] and . . . did so for each VA contract awarded to CSG." *Id.* Indeed, CSG "needed Dr. Shobha Mehta and/or Dr. Nitin Mehta to provide falsified past performance [reports] so that CSG's responses to the VA solicitation[s] were not rejected for failing to provide evidence of past performance." *Id.* at ¶ 115.

    ii.   The Citibuilders Conspiracy

Eventually, defendant Parekh—one of the founders of CSG and Dr. Nitin Mehta's nephew—"branched out" from CSG to establish a second entity that would "take the format developed by the CSG conspirators." Second Am. Compl. ¶¶ 69–70. Along with a disabled veteran named Melvin Goodweather, Parekh formed Citibuilders Solutions Group, LLC ("Citibuilders") and began using it "to seek out SDVOSB contracts." *Id.* at ¶ 70. To register Citibuilders as an SDVOSB, Parekh and Goodweather falsely represented that Goodweather ran the company. *Id.* at ¶¶ 147–55. In reality, however, Parekh was in charge. *Id.* at ¶¶ 147–55. Between 2012 and 2014, Citibuilders obtained over $6 million in payouts from SDVOSB set-aside contracts. *Id.* at ¶ 160.

Like with CSG, Dr. Nitin Mehta also played a role in the Citibuilders conspiracy. Specifically, he "knowingly enabled Citibuilders to fraudulently acquire SDVOSB contracts" by helping Citibuilders obtain the surety bonds needed to secure those contracts. *Id.* at ¶ 166. Under federal law, "contractors who bid on government contracts are required to post bid bonds,

6

performance bonds[,] and payment bonds." *Id.* at ¶ 171; *see* 40 U.S.C. § 3131. These surety bonds guarantee, respectively, that the contractor "will in fact undertake the contract if the bid is accepted," "will complete the project in accordance with the specifications set forth in the contract," and that "those who furnish labor and materials for the project will be paid." Second Am. Compl. ¶ 172.

To help Citibuilders obtain these bonds, Dr. Nitin Mehta entered into a "sham agreement" to indemnify Goodweather for up to $500,000 so that Goodweather in turn could indemnify "the bonding company" that provided Citibuilders with the necessary bonds. *Id.* Later, Dr. Nitin Mehta agreed "to indemnify the bonding company directly for Citibuilders' SDVOSB contracts" and agreed to "replace Goodweather as the service-disabled veteran 'owner' of Citibuilders." *Id.* Furthermore, "Dr. Nitin Mehta, Parekh, Goodweather, and Citibuilders concealed this indemnification arrangement" between Dr. Nitin Mehta and Goodweather "from the [g]overnment when holding Citibuilders out as an SDVOSB entity." *Id.* at ¶ 167.

## C. Dr. Nitin Mehta's Rule 12(b)(6) Motion to Dismiss

Dr. Nitin Mehta timely moved to dismiss all claims brought against him in the Second Amended Complaint for failure to state a claim under Rule 12(b)(6). ECF No. 316; *see* ECF No. 309. He argues that the allegations against him in the Second Amended Complaint fail to meet Rule 9(b)'s heightened pleading standard, which applies to claims brought under the False Claims Act. ECF No. 316-1 at 5–9. He also argues that the Second Amended Complaint fails to state a False Claims Act presentment claim (Count I), false-statement claim (Count II), or conspiracy claim (Count IV) against him because it does not allege that his actions proximately caused the government to enter into contracts with CSG or Citibuilders and pay claims under those contracts. *Id.* at 11–19.

In opposition, plaintiff-relator argues that the allegations in the Second Amended Complaint "are more than sufficiently particular" to satisfy Rule 9(b) because, "[w]hen taken in totality," they put [Dr. Nitin] Mehta on notice that he is required to prepare a defense against the allegedly false statements and records he made or caused to be made." ECF No. 320 at 11. As for the presentment clam, plaintiff-relator argues that the Second Amended Complaint adequately pleads causation because it alleges that Dr. Nitin Mehta "provided the vital financial support allowing Goodweather and Citibuilders to obtain the required bonding for the relevant government contracts." *Id.* at 6. And as for the false-statement and conspiracy claims, plaintiff-relator says that the allegations making up those claims against Dr. Nitin Mehta are "nearly identical" to the allegations making up the same claims against Dr. Shobha Mehta. *Id.* at 8, 10. And because the Court previously found that the Amended Complaint stated a false-statement and conspiracy claim against Dr. Shobha Mehta, he argues, the Court should reach the same outcome here. *Id.* (citing *Scollick II*, 2017 WL 3268857, at *24–29).

Dr. Nitin Mehta's motion is now ripe for consideration.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

To survive Dr. Nitin Mehta's Rule 12(b)(6) motion to dismiss, plaintiff-relator's Second Amended Complaint must comply with Federal Rules of Civil Procedure 8 and 9(b). *See Universal Health Services, Inc. v. United States ex rel. Julio Escobar* ("*Escobar*"), 136 S. Ct. 1989, 2004 n.6 (2016). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the pleading need not include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's obligation to set forth the grounds for his entitlement to relief "requires more than labels and conclusions." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that provides a mere "formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Instead, to withstand a Rule 12(b)(6) attack, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. *Id.* Plausibility requires more than a "sheer possibility that the defendant has acted unlawfully" but does not require a "probability" that the defendant is in the wrong. *Id.*

Plaintiffs suing under the False Claims Act must also satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Escobar*, 136 S. Ct. at 2004 n.6. Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the context of the False Claims Act, Rule 9(b)'s heightened pleading standard requires, at minimum, that the pleader "state the time, place, and content of the false misrepresentations, the fact misrepresented[,] and what was given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.* ("*Williams*"), 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1974)). The pleader must also "identify individuals allegedly involved in the fraud." *Id.* Mental states including malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b).

## B.  The False Claims Act

Plaintiff-relator's Second Amended Complaint brings three causes of action under the False Claims Act against Dr. Nitin Mehta: a presentment claim in violation of 31 U.S.C.

§ 3729(a)(1)(A), a false-statement claim in violation of § 3729(a)(1)(B), and a conspiracy claim

in violation of § 3729(a)(1)(C). The text of those provisions reads:

> **(a)** LIABILITY FOR CERTAIN ACTS.–
>
> **(1)** IN GENERAL. – Subject to paragraph (2), any person who –
>
> > **(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> >
> > **(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> >
> > **(C)** conspires to commit a violation of subparagraph (A) [or] (B);
> >
> > . . .
>
> > > is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a).

Accordingly, the elements of a presentment claim under subsection (a)(1)(A) are: (1) the

defendant presented—or caused to be presented—a claim for payment or approval to the federal

government, (2) the claim was false or fraudulent, and (3) the defendant knew the claim was false

when it was submitted. *United States ex rel. Hutchins v. DynCorp Int'l, Inc.* ("*Hutchins*"),

342 F. Supp. 3d 32, 47 (D.D.C. 2018). Similarly, the elements of a false-statement claim under

subsection (a)(1)(B) are: (1) the defendant made or used—or caused to be made or used—a record

or statement, (2) the record or statement was false, (3) the defendant knew the record or statement

was false, and (4) the record or statement was material to a false or fraudulent claim. *Id.* And to

state a conspiracy claim under subsection (a)(1)(C), the plaintiff must allege: (1) the existence of

an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by

the federal government, (2) the defendant willfully joined the agreement, and (3) one or more

conspirators knowingly committed one or more overt acts in furtherance of the object of the

conspiracy. *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.* ("*Miller*"), 608 F.3d 871, 889 (D.C. Cir. 2010).

i.   Scienter

As indicated by the text, presentment and false-statement claims both require that the defendant acted "knowingly." 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B). The False Claims Act defines "knowingly" as acting with (a) "actual knowledge of the information," (b) "deliberate indifference of the truth or falsity of the information," or (c) "reckless disregard of the truth or falsity of the information." *Id.* at § 3729(b)(1)(A). The plaintiff need not show "specific intent" to defraud. *Id.* at § 3728(b)(1)(B).

ii.   Causation

Additionally, the False Claims Act imposes liability not only on parties who actually submit a false claim to the government or make a false statement material to a false claim, but it also imposes liability on parties who *cause* a false claim to be submitted or a false statement to be made. *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B). To state a presentment claim or false-statement claim based on the theories that a defendant "cause[d]" a false claim "to be presented" or "cause[d]" a false statement "to be made or used," the plaintiff must allege that the defendant's conduct was "at least a substantial factor in causing, if not the but-for cause of," the submission of a false claim. *United States ex rel. Tran v. Computer Scis. Corp.* ("*Tran*"), 53 F. Supp. 3d 104, 126 (D.D.C. 2014) (quoting *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 48 (D.D.C. 2011)).

This causation inquiry is fact intensive, guided by "the degree to which [the defendant] was involved in the scheme that results in the actual submission." *Tran*, 53 F. Supp. 3d at 127. The "paradigmatic" case of "caus[ing]" a claim to be presented, made, or used occurs "when the non-submitting party takes advantage of an unwilling intermediary, thereby causing that party to submit

a false claim." *Id.* at 126–27. Courts have also found a defendant's actions to be a "substantial factor" in causing the submission of the claim when the non-submitter "was the driving force behind an allegedly fraudulent scheme" or "agreed to take certain critical actions in furtherance of the fraud." *Id.* at 127 (collecting cases). And some courts have found "allegations that a non-submitter continued to do business with an entity upon becoming aware that [the] entity was submitting false claims" sufficient to show causation. *Id.* (collecting cases).

## III. ANALYSIS

### A. The Second Amended Complaint Does Not State a Presentment Claim Against Dr. Nitin Mehta

Count I of the Second Amended Complaint brings a False Claims Act presentment claim against Dr. Nitin Mehta. Second Am. Compl. ¶¶ 215–28; *see* 31 U.S.C. § 3729(a)(1)(A). In plaintiff-relator's opposition brief, he clarifies that the Second Amended Complaint brings the presentment claim against Dr. Nitin Mehta based only on "the claims submitted to the [g]overnment by Citibuilders and not CSG." ECF No. 320 at 4 n.1. In other words, plaintiff-relator concedes that the Second Amended Complaint does not state a presentment claim against Dr. Nitin Mehta based on his alleged involvement in the CSG conspiracy. *See id.* Instead, plaintiff-relator brings his presentment claim against Dr. Nitin Mehta based solely on the theory that Dr. Nitin Mehta caused Citibuilders to submit a false claim. *See id.*

To state a presentment claim against Dr. Nitin Mehta based on his alleged involvement in the Citibuilders conspiracy, plaintiff-relator must plead that (1) Dr. Nitin Mehta caused Citibuilders to present a claim for payment or approval to the federal government, (2) the claim was false, and (3) Dr. Nitin Mehta knew the claim was false when it was submitted. *See Hutchins*, 342 F. Supp. 3d at 47; 31 U.S.C. § 3729(a)(1)(A). Additionally, because Rule 9(b) applies to claims brought under the False Claims Act, plaintiff-relator must plead the "circumstances

constituting" the alleged fraud "with particularity." Fed. R. Civ. P. 9(b); *see Escobar*, 136 S. Ct.

at 2004 n.6. Knowledge, however, "may be alleged generally." Fed. R. Civ. P. 9(b).

The Second Amended Complaint contains only two paragraphs describing Dr. Nitin

Mehta's alleged participation in Citibuilders' submission of false claims to the government. Those

paragraphs read:

> 166. Defendant Dr. Nitin Mehta [] knowingly enabled Citibuilders
> to fraudulently acquire SDVOSB contracts by engaging in overt acts
> such as entering into, what turned out to be a sham[] agreement with
> Goodweather indemnifying Goodweather for up to $500,000 which
> Goodweather in turn would use to indemnify the bonding company
> which was providing Citibuilders with surety bonds required to
> obtain the SDVOSB contracts, later agreeing to indemnify the
> bonding company directly for Citibuilders' SDVOSB contracts, and,
> upon information and belief, agreeing to replace Goodweather
> as the service-disabled veteran "owner" of Citibuilders.
>
> 167. Dr. Nitin Mehta, Parekh, Goodweather, and Citibuilders
> concealed this indemnification arrangement, where Dr. Nitin Metha
> [sic] would purportedly wholly indemnify Mr. Goodweather, from
> the Government when holding Citibuilders out as an SDVOSB
> entity.

Second Am. Compl. ¶¶ 166–67.

In support of his motion to dismiss, Dr. Nitin Mehta argues that plaintiff-relator does not

allege that any of his statements "proximately caused the United States to enter into any contracts"

with Citibuilders, as it must to state a presentment claim. ECF No. 316-1 at 5–9. More generally,

he argues that these allegations do not meet the heightened pleading standard set forth in Rule 9(b).

*Id.* In response, plaintiff-relator argues that these allegations adequately plead causation because

they allege that Dr. Nitin Mehta "provided the vital financial support" that "allowed Goodweather

and Citibuilders to obtain the required bonding for the relevant government contracts." ECF No.

320 at 6–7. Without this "crucial" financial support, plaintiff-relator argues, "it would have been

impossible to obtain the [government set-aside] contracts." *Id.*

For the reasons explained below, the Court agrees with Dr. Nitin Mehta that plaintiff-relator does not plead causation "with particularity," as he must to satisfy the heightened pleading standard in Rule 9(b). Nor does he adequately plead that Dr. Nitin Mehta acted with the scienter required to state a False Claims Act presentment claim.

    i.   <u>Causation</u>

The Second Amended Complaint does not allege with particularity that Dr. Nitin Mehta "cause[d]" Citibuilders to submit a false claim to the federal government. Fed. R. Civ. P. 9(b); 31 U.S.C. § 3729(a)(1)(A). To state a presentment claim based on the theory that Dr. Nitin Mehta "cause[d]" Citibuilders to present a false claim, plaintiff-relator must allege that Dr. Nitin Mehta's conduct was "at least a substantial factor in causing, if not the but-for cause of" the submission of a false claim. *Tran*, 53 F. Supp. 3d at 126 (quoting *Toyobo Co.*, 811 F. Supp. 2d at 48). And to decide whether Dr. Nitin Mehta's conduct was a "substantial factor" in Citibuilders' submission of a false claim to the government, the Court looks to "the degree to which [Dr. Nitin Mehta] was involved in the scheme that result[ed] in the actual submission." *Tran*, 53 F. Supp. 3d at 127. The "paradigmatic" case of "caus[ing]" a claim to be presented occurs "when the non-submitting party takes advantage of an unwilling intermediary, thereby causing that party to submit a false claim." *Id.* at 126–27. Yet courts have also found a defendant's actions to be a "substantial factor" when the defendant "agreed to take certain critical actions in furtherance of the fraud." *Id.* at 127.

Plaintiff-relator's theory of causation for the presentment claim is that without Dr. Nitin Mehta's agreement to indemnify Goodweather, and later a bonding company directly, Citibuilders would not have been able to obtain the bonds necessary to secure SDVOSB set-aside contracts. *See* Second Am. Compl. ¶ 166–67; *id.* ¶ 173 (alleging that government "construction contract[s] cannot be awarded and cannot commence unless the required bonding is in place"). Though this

theory of causation would seem to suggest that Dr. Nitin Mehta "agreed to take certain critical actions in furtherance of [Citibuilders'] fraud," *Tran*, 53 F. Supp. 3d at 127, the Second Amended Complaint does not allege the circumstances of these alleged actions with particularity. *See* Fed. R. Civ. P. 9(b); *Escobar*, 136 S. Ct. at 2004 n.6. Plaintiff-relator does not, as he must, plead the time and place Dr. Nitin Mehta entered into the alleged indemnification agreement with Goodweather. *See Williams*, 389 F.3d at 1256. Nor does he plead the time and place Dr. Nitin Mehta agreed to indemnify "the bonding company directly." Second Am. Compl. ¶ 166. Plaintiff-relator does not even provide the name of "the bonding company" that Dr. Nitin Mehta allegedly agreed to indemnify.[2] *See Williams*, 389 F.3d at 1256 (noting that a False Claims Act plaintiff must "identify individuals allegedly involved in the fraud"). And he gives no details about the contents of the agreement between Dr. Nitin Mehta and the bonding company. Although plaintiff-relator alleges that Dr. Nitin Mehta "agree[d] to replace Goodweather as the service-disable veteran 'owner' of Citibuilders," Second Am. Compl. ¶ 166, this information is, at best, a vague description of what appears to be one term of the indemnification agreement. Given this lack of information, the Court finds that these vague allegations about Dr. Nitin Mehta's involvement with Citibuilders do not satisfy Rule 9(b)'s heightened pleading standard.

    ii.  <u>Scienter</u>

    Nor does the Second Amended Complaint adequately plead that Dr. Nitin Mehta acted with the requisite scienter when dealing with Citibuilders. Section 3729(a)(1)(A) of the False Claims Act imposes liability on parties who "*knowingly*" "cause[ ] to be presented" a false claim. 31 U.S.C.

---

[2] Plaintiff-relator later alleges that "[b]onds were issued on the Citibuilders SDVOSB construction contracts by Hanover Insurance Company and Hudson Insurance Company through their agent and attorney-in-fact Schendel, Centennial. Together, these entities are referred to as the 'Bonding Defendants.'" Second Am. Compl. ¶ 170. These allegations, however, do not clarify which of these companies Dr. Nitin Mehta agreed to indemnify, because plaintiff-relator states only that he agreed to "indemnify *the bonding company* directly." *Id.* at ¶ 166 (emphasis added).

§ 3729(a)(1)(A) (emphasis added). To plead knowledge in the context of a presentment claim, plaintiff-relator must allege that Dr. Nitin Mehta had "actual knowledge" that Citibuilders' claims were false when submitted, acted with "deliberate indifference of the truth or falsity of the information" in the claims, or "reckless[ly] disregard[ed] the truth or falsity of the information" in the claims. *Id.*; *see Hutchins*, 342 F. Supp. 3d at 47. Notably, Rule 9(b)'s heightened pleading standard does not apply to mental states, which "may be alleged generally." Fed. R. Civ. P. 9(b). This does not mean, however, that a bare assertion of knowledge "devoid of further factual enhancement" will suffice. *Twombly*, 550 U.S. at 555. Allegations of knowledge must still satisfy Rule 8(a).

As noted above, the Second Amended Complaint contains only two paragraphs describing Dr. Nitin Mehta's alleged involvement with Citibuilders. *See* Second Am. Compl. ¶ 166–167. He begins those two paragraphs by stating, "[d]efendant Dr. Nitin Mehta . . . *knowingly* enabled Citibuilders to fraudulently acquire SDVOSB contracts by engaging in overt acts." *Id.* ¶ 166 (emphasis added). Yet he provides no further factual allegations to support this "naked assertion." *Twombly*, 550 U.S. at 555. Plaintiff-relator does not, for example, plead that Dr. Nitin Mehta knew that Citibuilders was not in fact an SDVOSB or that Citibuilders misrepresented itself as an SDVOSB to secure set-aside government contracts. Nor does he allege that Dr. Nitin Mehta recklessly disregarded the truth or falsity of Citibuilders' SDVOSB status or the information in Citibuilders' claims.

Perhaps the closest plaintiff-relator comes to providing factual allegations to support his assertion that Dr. Nitin Mehta "knowingly enabled Citibuilders to fraudulently acquire SDVOSB contracts" is when he alleges that "Dr. Nitin Mehta, Parekh, Goodweather, and Citibuilders concealed the indemnification arrangement [between Dr. Nitin Mehta and Goodweather] from the

[g]overnment when holding Citibuilders out as an SDVOSB." Second Am. Compl. ¶¶ 167. Yet

this allegation says nothing about Dr. Nitin Mehta's knowledge, or lack thereof, about Citibuilders'

*alleged misrepresentation of itself as an SDVOSB*. It says only that Dr. Nitin Mehta concealed his

indemnification agreements with Goodweather and the bonding company from the government.

Plaintiff-relator's conclusory recitation of knowledge, then, is not enough to survive Dr. Nitin

Mehta's Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555. And because the Court

finds that the Second Amended Complaint fails to allege the causation and scienter elements of a

presentment claim against Dr. Nitin Mehta, it need not address falsity.

## B. The Second Amended Complaint Does Not State a False-Statement Claim Against Dr. Nitin Mehta

Next, Count II of the Second Amended Complaint brings a False Claims Act false-

statement claim against Dr. Nitin Mehta. Second Am. Compl. ¶¶ 229–40. Unlike with the

presentment claim, plaintiff-relator does not limit his theory of liability for the false-statement

claim to Dr. Nitin Mehta's involvement with the Citibuilders conspiracy. To survive Dr. Nitin

Mehta's Rule 12(b)(6) motion to dismiss the false-statement claim, then, the Second Amended

Complaint must allege that (1) Dr. Nitin Mehta made or used—or caused CSG or Citibuilders to

make or use—a record or statement, (2) the record or statement was false, (3) he knew the record

or statement was false, and (4) the record or statement was material to a false or fraudulent claim.

*See Hutchins*, 342 F. Supp. 3d at 47. The "circumstances constituting" the alleged fraud must be

pleaded "with particularity," though knowledge "may be alleged generally." Fed. R. Civ. P. 9(b);

*see Escobar*, 136 S. Ct. at 2004 n.6.

In support of his motion to dismiss, Dr. Nitin Mehta again argues that plaintiff-relator fails

to plead causation and, more generally, that the allegations against him do not satisfy Rule 9(b)'s

heightened pleading standard. ECF No. 316-1 at 15. Plaintiff-relator responds by arguing that the

allegations against Dr. Nitin Mehta are "nearly identical" to those previously made against his wife, Dr. Shobha Mehta, which the Court found sufficient to state a false-statement claim. ECF No. 320 at 8 (citing *Scollick II*, 2017 WL 3268857, at *8–9).

The Court will address the allegations describing Dr. Nitin Mehta's purported involvement with Citibuilders and CSG separately, though it can quickly dispose of the false-statement claim based on Dr. Nitin Mehta's involvement with Citibuilders.

### i.  Citibuilders Conspiracy

For the same reasons the Second Amended Complaint fails to state a *presentment claim* against Dr. Nitin Mehta based on his alleged involvement in the Citibuilders conspiracy, it likewise fails to state a *false-statement claim* based on his alleged involvement in the same. As explained above, the Second Amended Complaint contains only two paragraphs describing Dr. Nitin Mehta's alleged involvement with Citibuilders. *See* Second Am. Compl. ¶¶ 166–67. And the presentment and false-statement claims share the common elements of causation and knowledge, which are evaluated under the same standard for both types of claims. *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B); *id.* at § 3729(b)(1)(A). Thus, the Court finds that the Second Amended Complaint fails to state a false-statement claim against Dr. Nitin Mehta based on his alleged involvement with the Citibuilders conspiracy.

### ii.  CSG Conspiracy

This leaves Dr. Nitin Mehta's alleged involvement with CSG. But these allegations fare no better, as the Second Amended Complaint does not adequately plead that Dr. Nitin Mehta caused CSG to submit false statements, nor does it adequately plead that Dr. Nitin Mehta did so "knowingly." 31 U.S.C. § 3729(a)(1)(B).

a. *Causation*

To state a false-statement claim based on the theory that Dr. Nitin Mehta "cause[d]" CSG to make or use a false record or statement, plaintiff-relator must allege that Dr. Nitin Mehta's conduct was "at least a substantial factor in causing, if not the but-for cause of" CSG's submission of a false claim. *Tran*, 53 F. Supp. 3d at 126 (quoting *Toyobo Co.*, 811 F. Supp. 2d at 48). Courts have found a defendant's actions to be a "substantial factor" when the defendant "agreed to take certain critical actions in furtherance of the fraud." *Id.* at 126–27.

At first glance, this seems to be precisely what plaintiff-relator is alleging. Plaintiff-relator claims that Dr. Nitin Mehta—along with his wife Dr. Shobha Mehta—helped CSG fraudulently obtain government set-aside contracts by falsely representing CSG's past performance on construction projects for a non-existent entity called the "Mehta Medical Group." Second Am. Compl. ¶ 96. Without the doctors' willingness to do so, plaintiff-relator alleges, CSG could not have obtained the SDVOSB set-aside contracts. *Id.* at ¶ 115.

But most of the allegations describing Dr. Nitin Mehta's participation in the CSG conspiracy plead that Dr. Nitin Mehta "*and/or*" Dr. Shobha Mehta took certain actions. *See* Second Am. Compl. ¶¶ 96, 97, 99, 102, 105 (emphasis added). For example, plaintiff-relator alleges that Dr. Nitin Mehta took the following actions in furtherance of the CSG conspiracy:

> 97. As part of the contracting procedure, a VA contracting officer would transmit a performance survey questionnaire to Dr. Shoba Mehta *and/or* Dr. Nitin Mehta.
>
> . . .
>
> 99. In furtherance of the CSG conspiracy, Dr. Shobha Mehta *and/or* Dr. Nitin Mehta completed the customer satisfaction survey claiming that the CSG work performance was outstanding.
>
> . . .
>
> 102. Dr. Shobha Mehta's and Dr. Nitin Mehta's involvement in the CSG conspiracy continued over a period of years. Dr. Shobha Mehta *and/or* Dr. Nitin Mehta routinely returned a customer satisfaction

> [sic] and, upon information and belief, did so for each VA contract awarded to CSG. Each such submission constituted an act in furtherance of the CSG conspiracy.
>
> . . .
>
> 105. The material misrepresentations made by Dr. Shobha Mehta *and/or* Dr. Nitin Mehta [sic] knew that CSG claimed in some of its submissions that the renovations of Dr. Shobha Mehta's office occurring at 5021 Seminary Road, Alexandria, VA (the location specified by CSG) exceeded $1 million dollars. That office location, however, consisted of a single room approximating 200 square feet and had not been renovated since it was originally constructed, upon information and belief, back in the 1980's.

Second Am. Compl. ¶¶ 97, 99, 102, 105 (emphases added).

Pleading that *either* Dr. Shobha Mehta *or* Dr. Nitin Mehta acted in a certain way, however, does not meet Rule 9(b)'s heightened pleading standard. A plaintiff bringing a False Claims Act suit must "identify individuals allegedly involved in the fraud." *Williams*, 389 F.3d at 1256; *accord Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 92 (D.D.C. 2006) ("Requiring the three defendants to guess amongst themselves which one is responsible for the instances of mail and wire fraud alleged by the plaintiffs is surely not in keeping with the purposes of Rule 9(b)."); *United States ex rel. Joseph v. Cannon* ("*Joseph*"), 642 F.2d 1373, 1385–86 (D.C. Cir. 1981). Alleging that Dr. Shobha Mehta *and/or* Dr. Nitin Mehta acted in some way is akin to alleging that either (1) Dr. Shobha Mehta acted, or (2) Dr. Nitin Mehta acted, or (3) both doctors acted. This "and/or" pleading does not identify, with particularity, the individuals involved. As a result, the Second Amended Complaint does not put Dr. Nitin Mehta on notice of the actions he is alleged to have committed. *See Williams*, 389 F.3d at 1256 (quoting *Joseph*, 642 F.2d at 1385) (noting that the purpose of requiring False Claims Act plaintiffs to identify defendants with particularity is, in part, to "guarantee all defendants sufficient information to allow for preparation of a response").

What remains, then, are four allegations specific to Dr. Nitin Mehta. They read:

101. Dr. Nitin Mehta is believed to have signed and submitted his falsified past performance survey reports to a [sic] FAA contracting officer. Such submissions commenced in on or about November 2010.

102. Dr. Shobha Mehta's and Dr. Nitin Mehta's involvement in the CSG conspiracy continued over a period of years.

. . .

104. Dr. Nitin Mehta also answered emails from government Contracting Officers verifying the false information provided in the proposals and any other questions they may have had.

. . .

107. Dr. Nitin Mehta completed a customer satisfaction survey on November 4, 2010 concerning work done on Dr. Shobha's medical office and gave CSG a perfect score, knowing that this response was false and that doing so would further the fraudulent conspiracy that required CSG to identify past performance and obtain past performance surveys.

Second Am. Compl. ¶¶ 101, 102, 104, 107.

These allegations alone do not plead with particularity the circumstances constituting the purported fraud. *See* Fed. R. Civ. P. 9(b). In the context of the False Claims Act, Rule 9(b) requires, at minimum, that the plaintiff "state the time, place, and content of the false misrepresentations, the fact misrepresented[,] and what was given up as a consequence of the fraud." *Williams*, 389 F.3d at 1256 (quoting *Kowal*, 16 F.3d at 1278). Here, plaintiff-relator's allegations fall short of Rule 9(b)'s standard, because they identify neither the content of Dr. Nitin Mehta's allegedly false misrepresentations, nor the facts misrepresented. *See id.*

Plaintiff-relator first alleges that Dr. Nitin Mehta "signed and submitted false past performance survey reports to an FAA contracting officer" beginning around November 2010. Second Am. Compl. ¶ 101. Though he provides a date, as he must, plaintiff-relator neither alleges

*what* these reports said nor *why* those statements were false.[3] *See Williams*, 389 F.3d at 1256.

Plaintiff-relator's allegation that Dr. Nitin Mehta "answered emails" from government contract officers "verifying the false information provided in the proposals" also omits crucial details. *Id.* at ¶ 104. What did Dr. Nitin Mehta write in those emails? Why was the information in the proposals false? The Second Amended Complaint does not say. The closest plaintiff-relator comes to pleading the content of Dr. Nitin Mehta's alleged false misrepresentations is when he alleges that Dr. Nitin Mehta "completed a customer satisfaction survey" regarding "work done on Dr. Shobha Mehta's medical office and gave CSG a perfect score." *Id.* at ¶ 107. Yet alleging that Dr. Nitin Mehta gave CSG a "perfect score" does not provide, with particularity, the fact misrepresented or why this representation was false. Did CSG botch the job? Did it not perform the job at all? Without allegations as to *why* the representation that CSG deserved a "perfect score" was false, this allegation does not satisfy Rule 9(b)'s heightened pleading standard. *See Williams*, 389 F.3d at 1256

In his defense, plaintiff-relator argues that the Court already found "nearly identical" allegations against Dr. Shobha Mehta sufficient to state a false-statement claim against her. ECF No. 320 at 8 (citing *Scollick II*, 2017 WL 3268857, at *9). Plaintiff-relator's characterization of these allegations as "nearly identical," however, is factually inaccurate. In *Scollick II*, the Court evaluated the sufficiency of the allegations against Dr. Shobha Mehta in the *Amended Complaint*. 2017 WL 3268857, at *9. The Amended Complaint included allegations against only Dr. Shobha Mehta and did not include the "and/or" pleading later added in the Second Amended Complaint. *Compare* Am. Compl. ¶¶ 95–103, *with* Second Am. Compl. ¶¶ 96, 97, 99, 102, 105. The Court's

---

[3] The allegation that Dr. Nitin Mehta submitted these reports to an "*FAA* contracting officer" also conflicts with other allegations that the reports were submitted to the VA, not the FAA. *See* Second Am. Compl. ¶¶ 101–02 (emphasis added).

analysis today, then, is not identical to its analysis in *Scollick II*. And while the allegations against

Dr. Shobha Mehta in the Amended Complaint could survive a Rule 12(b)(6) motion to dismiss,

the allegations in the Second Amended Complaint against Dr. Nitin Mehta cannot.

### b.  Scienter

The Second Amended Complaint also fails to plead that Dr. Nitin Mehta acted with the

requisite scienter when he allegedly participated in the CSG conspiracy. To plead a false-statement

claim under the False Claims Act, a plaintiff must allege that the defendant acted "knowingly."

31 U.S.C. § 3729(a)(1)(B). The False Claims Act defines "knowingly" as acting with (a) "actual

knowledge of the information," (b) "deliberate indifference of the truth or falsity of the

information," or (c) "reckless disregard of the truth or falsity of the information." *Id.* at

§ 3729(b)(1)(A). The plaintiff need not show "specific intent" to defraud. *Id.* at § 3728(b)(1)(B).

And though Rule 9(b)'s heightened pleading standard applies in False Claims Act suits, Rule 9(b)

provides that "knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).

The Second Amended Complaint contains only two paragraphs describing Dr. Nitin

Mehta's state of mind during his alleged involvement in the CSG conspiracy. Those paragraphs

read:

> 105. The material misrepresentations made by Dr. Shobha Mehta
> *and/or* Dr. Nitin Mehta [sic] knew that CSG claimed in some of its
> submissions that the renovations of Dr. Shobha Mehta's office
> occurring at 5021 Seminary Road, Alexandria, VA (the location
> specified by CSG) exceeded $1 million dollars. That office location,
> however, consisted of a single room approximating 200 square feet
> and had not been renovated since it was originally constructed, upon
> information and belief, back in the 1980's.
>
> . . .
>
> 107. Dr. Nitin Mehta completed a customer satisfaction survey on
> November 4, 2010 concerning work done on Dr. Shobha Mehta's
> medical office and gave CSG a perfect score, knowing that this

> response was false and that doing so would further the fraudulent
> conspiracy that required CSG to identify past performance and
> obtain past performance surveys.

Second Am. Compl. ¶¶ 105, 107.

The allegations in paragraph 105 suffer from the same flaw as explained above. Though knowledge need not be pleaded with particularity, the use of "and/or" makes it unclear whether Dr. Nitin Mehta is alleged to have known the contents of CSG's bid proposals. Furthermore, the allegations in paragraph 107 provide nothing more than a conclusory statement that Dr. Nitin Mehta gave CSG a perfect score, "*knowing* that this response was false." *Id.* at ¶ 105 (emphasis added). Even under Rule 8(a)'s less stringent pleading standard, this bare assertion of knowledge, "devoid of further factual enhancement[,]" will not suffice. *Twombly*, 550 U.S. at 555.

For these reasons, the Court finds that the Second Amended Complaint does not state a false-statement claim against Dr. Nitin Mehta based on his alleged participation in the CSG conspiracy. And because it finds that plaintiff-relator does not adequately plead causation or scienter, the Court need not consider whether plaintiff-relator adequately pleaded falsity or materiality.

## C. The Second Amended Complaint Does Not State a Conspiracy Claim Against Dr. Nitin Mehta

Finally, Count IV of the Second Amended Complaint lodges a False Claims Act conspiracy claim against Dr. Nitin Mehta. Second Am. Compl. ¶¶ 245–60. To state a conspiracy claim under the False Claims Act, the Second Amended Complaint must plausibly plead that (1) an agreement existed to have false or fraudulent claims allowed or paid by the government, (2) Dr. Nitin Mehta willfully joined the agreement, and (3) one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy. *See Miller*, 608 F.3d at 889; *Iqbal*, 556 U.S. at 678. As with the other two claims, plaintiff-relator must plead the circumstances

constituting the fraud "with particularity." Fed. R. Civ. P. 9(b); *see Escobar*, 136 S. Ct. at 2004 n.6.

The Court finds that the Second Amended Complaint does not state a conspiracy claim based on Dr. Nitin Mehta's alleged involvement in either the CSG or the Citibuilders conspiracy. In *Scollick II*, the Court found that the Amended Complaint stated a conspiracy claim against Dr. Shobha Mehta based on her involvement with the CSG conspiracy. 2017 WL 3268857, at *9. In so finding, it relied on the allegation in the Amended Complaint that "[u]pon information and belief, one or more of the CSG conspirators approached Dr. [Shobha] Mehta to obtain her assistance in furthering the conspiracy by agreeing to submit materially false performance questionnaires to the VA." *Id.* (citing Am. Compl. ¶ 93).

But when plaintiff-relator filed his Second Amended Complaint with newly added allegations against Dr. Nitin Mehta, he edited that paragraph to read that "one or more of the CSG conspirators approached *Dr. Shobha Mehta and/or Dr Nitin Mehta* to obtain *their* assistance in furthering the conspiracy." Second Am. Compl. ¶ 94 (emphases added). And for the reasons explained above, this alternative "and/or" pleading fails to allege, with particularity, that Dr. Nitin Mehta willfully joined the CSG conspiracy. The Second Amended Complaint thus fails to state a conspiracy claim against Dr. Nitin Mehta based on his alleged involvement with CSG.

Nor does it state a conspiracy claim based on the allegations describing Dr. Nitin Mehta's involvement in the Citibuilders conspiracy. As noted above, the Second Amended Complaint contains only two paragraphs describing Dr. Nitin Mehta's interactions with the Citibuilders conspirers. Those paragraphs read:

> 166. Defendant Dr. Nitin Mehta [] knowingly enabled Citibuilders to fraudulently acquire SDVOSB contracts by engaging in overt acts such as entering into, what turned out to be a sham[] agreement with Goodweather indemnifying Goodweather for up to $500,000 which

Goodweather in turn would use to indemnify the bonding company which was providing Citibuilders with surety bonds required to obtain the SDVOSB contracts, later agreeing to indemnify the bonding company directly for Citibuilders' SDVOSB contracts and, upon information and belief, agreeing to replace Goodweather as the service-disabled veteran 'owner' of Citibuilders.

167. Dr. Nitin Mehta, Parekh, Goodweather, and Citibuilders concealed this indemnification arrangement, where Dr. Nitin Metha [sic] would purportedly wholly indemnify Mr. Goodweather, from the Government when holding Citibuilders out as an SDVOSB entity.

Second Am. Compl. ¶¶ 166–67.

These allegations fail to state a False Claims Act conspiracy claim because plaintiff-relator does not allege, with particularity, "one or more overt acts [taken] in furtherance of the object of the conspiracy." *Miller*, 608 F.3d at 889. As explained above with respect to the presentment claim, plaintiff-relator omits information necessary to satisfy the Rule 9(b) pleading standard. This information includes the time and place Dr. Nitin Mehta entered into the alleged indemnification agreements with Goodweather and the bonding company. *See Williams*, 389 F.3d at 1256; Second Am. Compl. ¶ 166. And plaintiff-relator neither identifies "the bonding company" that Dr. Nitin Mehta agreed to indemnify, nor provides any details about the contents of that agreement.[4] *See Williams*, 389 F.3d at 1256. Finally, like with the presentment claim, the allegation that Dr. Nitin Mehta "agree[d] to replace Goodweather as the service-disable veteran 'owner' of Citibuilders," Second Am. Compl. ¶ 166, is, at best, a vague description of what appears to be one term of the indemnification agreement. Given these shortcomings, the Court finds that the Second Amended

---

[4] As explained above, plaintiff-relator's allegations that "[b]onds were issued on the Citibuilders SDVOSB construction contracts by Hanover Insurance Company and Hudson Insurance Company through their agent and attorney-in-fact Schendel, Centennial," Second Am. Compl. ¶ 170, do not clarify the allegations here, because plaintiff-relator does not specify which "bonding company" he agreed to indemnify. *Id.* at ¶ 166.

Complaint does not state a conspiracy claim against Dr. Nitin Mehta based on his alleged involvement in the Citibuilders conspiracy.

## IV. CONCLUSION

In sum, the Court will **GRANT** defendant Dr. Nitin Mehta's motion, ECF No. 316, to dismiss the claims against him in the Second Amended Complaint, ECF No. 298, for failure to state a claim. All claims against Dr. Nitin Mehta in the Second Amended Complaint, ECF No. 298, will be **DISMISSED** without prejudice.

An accompanying Order consistent with this Memorandum Opinion shall follow.

Date: February 25, 2021

Hon. Royce C. Lamberth
United States District Judge

27