## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANDREW SCOLLICK**,
*ex rel.* **UNITED STATES OF AMERICA**,

    *Plaintiff-relator,*

**v.**

**VIJAY NARULA**, *et al.*,

    *Defendants.*

**Case No. 1:14-cv-01339-RCL**

## <u>MEMORANDUM OPINION</u>

Trial is fast approaching in this multidefendant *qui tam* False Claims Act ("FCA") case. Plaintiff-Relator Andrew Scollick[1] seeks to recover damages from six defendants based on allegedly false claims for payments submitted to the U.S. government under the Department of Veterans' Affairs ("VA") service-disabled veteran-owned small business ("SDVOSB") contract set aside program. Twenty-one pretrial motions are pending. The Court afforded the parties an opportunity to argue these motions at the pretrial conference on May 2, 2024. This Memorandum Opinion now sets forth the Court's reasoning in resolving the numerous pending motions.

The Court assumes familiarity with the background of this case, which is detailed at length in several opinions. *See, e.g., United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26 (D.D.C. 2016); *United States ex rel. Scollick v. Narula*, No. 14-cv-1339 (RCL), 2017 WL 3268857 (D.D.C. July 31, 2017) ("Mot. to Amend Complaint Op."); *Scollick ex rel. United States v. Narula*, No. 14-cv-1339 (RCL) 2022 WL 3020936. (D.D.C. July 29, 2022) ("S.J. Op."). The Court begins with plaintiff's motions and proceeds to the defendants' motions.

---

[1] For concision, the Court refers to Mr. Scollick as "plaintiff" throughout the rest of this memorandum opinion.

## I.   PLAINTIFF'S MOTIONS

### A.   Plaintiff's Motion in Limine to Exclude Testimony of Defendants' Expert Thomas J. McGrath

Plaintiff moves to exclude any testimony from defense "hybrid expert" Thomas J. McGrath—former Director of the Veteran Affairs ("VA") Center for Verification and Evaluation ("CVE"). ECF No. 444; Pretrial Stmt. 14, ECF No. 489. Defendants oppose. ECF No. 476. Defendants Amar Gogia ("Gogia") and CSG, LLC ("CSG") (collectively, the "CSG Defendants") seek to have Mr. McGrath testify about (1) his personal knowledge of the SDVOSB certification process, (2) his experiences performing and supervising investigations while serving as Director of the CVE, and (3) his personal experience evaluating and approving CSG's SDVOSB recertification in 2016. *See* McGrath Disclosure 2–3, ECF 444-2.

Plaintiff asks the Court to exclude the testimony of Mr. McGrath on three bases: (1) Mr. McGrath was untimely disclosed as a witness, (2) Mr. McGrath's testimony is unauthorized, and (3) Mr. McGrath's testimony would be confusing or otherwise unhelpful. ECF No. 444 at 4–9.

First, plaintiff argues that the CSG Defendants' disclosure of Mr. McGrath was untimely. *Id.* at 4–6. Defendants disclosed Mr. McGrath on April 8, 2024—the date the parties agreed to exchange expert disclosures. *See* ECF No. 476-1. However, as a "hybrid" witness, Mr. McGrath is presented as both a fact witness and non-retained expert. *See* ECF No. 444 at 2. Plaintiff argues that defendants were obligated, under Rule 26 (a)(1)(A)(i), to have disclosed Mr. McGrath as a fact witness before April 8th, in defendants' initial disclosures, or in supplemented initial disclosures under Rule 26 (e). *Id.* at 4–6. Plaintiff further argues that defendants' nondisclosure requires this Court to preclude Mr. McGrath from testifying because under the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The CSG Defendants respond by arguing that there are separate disclosure requirements for experts under Rule 26(a)(2)—which they complied with. ECF No. 476 at 2. They further cite to the Advisory Committee Notes to the 2010 amendments to Rule 26 which states that:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify *as a fact witness and also provide expert testimony* under Evidence Rule 702, 703, or 705. . . . Parties must identify such witnesses under Rule 26(a)(2)(A) and *provide the disclosure required under Rule 26(a)(2)(C)*.

2010 Notes to Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). In short, the CSG Defendants argue that Mr. McGrath was only subject to the expert disclosure requirements of Rule 26(a)(2)— not the disclosure requirements applicable to lay witnesses in Rule 26(a)(1). In his Reply, plaintiff does not seriously engage with the CSG Defendants' arguments as to the applicable disclosure requirements or cite any controlling case law in his favor.[2] Additionally, plaintiff does not explain what harm or prejudice, if any, was caused by the CSG Defendants' allegedly belated disclosure. Accordingly, the Court is unpersuaded by plaintiff's late disclosure arguments.

Next, plaintiff argues that Mr. McGrath's testimony would be unauthorized. ECF No. 444 at 6. More specifically, plaintiff argues that before obtaining testimony from a present or former agency employee or official, a party must comply with the agency's *Touhy* regulations, which require the agency's approval before the present or former employee can testify. ECF No. 444 at 3 (citing *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Plaintiff alleges that Mr. McGrath

---

[2] To be sure, it is far from obvious that defendants are correct about the applicable disclosure obligations. The CSG Defendants hand waive the fact that Rule 26(a)(2)'s disclosure requirements are "[i]n addition to the disclosures required by Rule 26(a)(1)." Fed. R. Civ. P. 26(a)(2). Thus, defendants' argument that "disclosure of McGrath is *only* subject to requirements of Subsection (a)(2)" may only be half correct. ECF No. 476 at 4. Plaintiff could have argued that Mr. McGrath—as a hybrid witness—was subject to disclosure requirements of *both* Rule 26(a)(2) *and* Rule 26(a)(1). However, this argument goes well beyond anything plaintiff presents in his Motion or Reply Brief, thus the Court will not examine that argument here.

never obtained authorization from the VA for his testimony, and that defendants did not comply with the VA's *Touhy* regulations before contacting or disclosing Mr. McGrath as a fact and expert witness. *Id.* at 1. The CSG Defendants respond by arguing that (1) only the VA, not Mr. Scollick, can seek to enforce *Touhy* requirements against a potential expert,[3] and (2) 38 C.F.R. § 14.801(2)(i) provides an exception to *Touhy* requirements where "the United States [1] is a party, [2] is represented or [3] has a direct and substantial interest." ECF No. 476 at 5–6.[4] Defendants further argue that the United States is a "party" in this case because the case is styled as *United States ex rel. Scollick v. Vijay Narula*, (ii) is "represented" by its attorney of record, Assistant United States Attorney Darrell Valdez, and (iii) "has a direct and substantial interest" as it is entitled to the vast majority of damages recovered in this action. *Id.* at 6. Because it appears defendants are correct about an exception being applicable, the Court finds plaintiff's *Touhy* arguments unpersuasive.[5]

Finally, plaintiff argues that Mr. McGrath's testimony would be highly prejudicial and would mislead or otherwise be confusing to a jury. ECF No. 444 at 8. In particular, plaintiff argues that Mr. McGrath's testimony would not be helpful because all of the conduct alleged in this case occurred *before* Mr. McGrath authorized the recertification of CSG as a SDVOSB in 2016. *Id.* at

---

[3] Plaintiff does not bother to address this argument in his Reply. *See* ECF No. 485.

[4] Plaintiff argues in his Reply that this exception is inapplicable. ECF No. 485 at 2–3. However, the sole authority cited for that position is a Second Circuit case addressing whether the government is "a party" to a False Claims Act case brought by a relator for purposes of timeliness of appeal. *See U.S. ex rel. Eisenstein v. City of New York*, 540 F.3d 94 (2d Cir. 2008), *aff'd sub nom. U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009). That nonbinding case is disanalogous and does not cite *Touhy*. *See id.* Moreover, even if the Court considered that case persuasive, it could only dispose of one of the three *Touhy* exception arguments that defendants make here.

[5] This Court examined a similar *Touhy* exception in *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 246 F.R.D. 322, 326 (D.D.C. 2007) (Lamberth, J.). There, this Court examined U.S. Department of Health and Human Services ("HHS") *Touhy* regulations, which "do not apply in '[a]ny civil or criminal proceedings where the United States' or an agency thereof 'is a party.'" *Pogue*, 246 F.R.D. 322, 324 n.1. This Court then held that "[f]or the purposes of these regulations, the United States is not a party to a qui tam action in which it has declined to intervene." *Id.* However, this Court's holding in *Pogue* was explicitly limited to the HHS *Touhy* exception which is narrower in scope than the VA *Touhy* exception. *Id.* The HHS exception only applies when the United States "is a party," *id.*, by contrast the VA exception applies when "the United States is a party, is represented or has a direct and substantial interest." ECF No. 476 at 5–6. Thus, notwithstanding *Pogue*, plaintiff has failed to persuade the Court that the broader VA *Touhy* exception is inapplicable here.

9. The CSG Defendants did not address plaintiff's temporal argument in their opposition. *See* ECF No. 476. Instead, they argued that Mr. McGrath's testimony would be helpful because "his testimony will offer valuable insights regarding the CVE certification process during the relevant time and explain his decision to recertify CSG as a Service-Disabled Veteran-Owned Small Business ("SDVOSB") in 2016." *Id.* at 1.

The Court is largely unpersuaded by plaintiff's argument that the bulk of Mr. McGrath's testimony would be prejudicial, confusing, or misleading. *See* ECF No. 444 at 8. Much of what defendants have argued that Mr. McGrath will testify to—such as information about the CVE process and the factors that go into certifying a SDVOSB—could be helpful to the jury in resolving the issues. Accordingly, the Court will deny plaintiff's motion to exclude the testimony of Mr. McGrath. ECF No. 444. However, the Court is sympathetic to plaintiff's worries about juror confusion if Mr. McGrath testifies about a recertification that occurred after the allegedly false claims were made. If defendants intend to introduce testimony of the recertification of CSG as a SDVOSB in 2016, they should be prepared to explain why that information is relevant in this case.

**B.  Plaintiff's Motion in Limine to Exclude Testimony of Defendants' Expert Robb Wong**

Plaintiff moves to exclude any testimony from Robb Wong—former Associate Administrator of Government Contracts & Business Development of the United States Small Business Administration ("SBA"). ECF No. 445; Pretrial Stmt. 12. Defendants oppose. ECF No. 468. Vijay Narula, Ajay K. Madan, and Optimal Solution and Technology, Inc. ("OST") (collectively, the "OST Defendants") intend for Mr. Wong to testify that (1) OST entered into an FAA Mentor-Protégé Agreement ("MPA") with CSG and acted within that agreement and approval letter, and (2) that the OST Defendants did not require an MPA with the VA to provide mentoring assistance in support of CSG's VA contracts. *See* ECF 468 at 2.

Mr. Wong's opinions stem from defendants' now-tired argument that their FAA MPA approval letter absolves them of any allegedly fraudulent conduct in obtaining VA contracts. Evaluating this motion will require the Court to explain defendants' FAA MPA argument and remind parties of what the Court has already said—and has not said—about that argument.

Defendants' FAA MPA argument relies principally on a single phrase in their approval letter for the program which said that the letter "does not preclude [OST] from mentoring to Centurion Solutions Group, LLC, on other government contracts." ECF No. 471-2. The OST Defendants argue that the negative implication of that phrase provided authorization for a mentorship relationship on VA contracts—or at least that they thought that it did. ECF No. 471-2. That argument fails as a matter of logic, and strains credulity for several reasons. First, the FAA MPA approval letter said that it did not provide authorization for any mentorship relationship—even as to FAA contracts. ECF No. 468-2. Indeed, the letter said "[t]his approval does not constitute authorization to proceed with work contained in the Mentor-Protégé Agreement until the approved agreement is incorporated into an FAA contract." ECF No. 471-2. Surely, the FAA MPA approval letter could not authorize mentoring on VA contracts if it did not yet even authorize mentoring on FAA contracts.

Furthermore, the VA has its own MPA Program separate from the FAA MPA program. As this Court has explained before, "if OST wanted to support CSG performing VA contracts, there is a separate VA Mentor-Protégé program with a separate approval process they could have applied to . . . . They did not do so." S.J. Op. at *8 n. 8. For these reasons and others, on summary judgment, the Court declared defendants' FAA MPA to be (1) "irrelevant" as to whether defendants made and submitted false claims, but only (2) "unpersuasive" as to whether defendants had actual knowledge that those claims were false *Id.* at *8 n. 8, *9. Undeterred, defendants have resurrected

the same argument. The Court once again holds that the FAA MPA and approval letter are irrelevant to the issue of whether defendants' claims were false. However, whether defendants' claims were false and whether defendants *knew* they were false are two separate issues. Evidence that might be irrelevant to the former may nonetheless be relevant to the latter.

On the issue of their knowledge, defendants argue that the Court must revisit their FAA MPA argument in light of the Supreme Court's recent decision in *United States es. Rel. Schutte v Supervalu Inc.*, 598 U.S. 739 (2023). ECF No. 468 at 3–4. They argue that *Supervalu* held that "the False Claims Act's scienter element refers to the defendant's knowledge and subjective beliefs at the time the allegedly false claim was made." *Id.* Thus, Defendants argue that this "Court's prior ruling has been superseded by *Supervalu.*" Defendants are mistaken. To be sure, defendants are right about what the Supreme Court said. They are just wrong about what *this* Court said.

It is true that *Supervalu* stands for the proposition that the FCA's scienter element is subjective, not objective. *Supervalu*, 598 U.S. at 749 ("The FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed."). Fortunately, this Court's Summary Judgment Opinion was not superseded by *Supervalu*—because it is *consistent* with *Supervalu*. This Court never analyzed defendants' knowledge based on some objective standard. Instead, this Court found unpersuasive defendants' arguments that they truly believed that their FAA MPA authorized allegedly fraudulent acts on VA contracts. S.J. Op., at *9. The Court's skepticism was related to the defendants' subjective beliefs. *See id.* In particular, the Court's doubt was based on the wealth of contemporaneous evidence of defendants' actual knowledge of the falsity of their claims—a subjective assessment. *Id.* Still, the Court did not definitively decide the issue against defendants. *See id.* Instead, the Court simply held that there was a triable issue fact regarding whether

defendants' had actual knowledge of the fraud they were allegedly committing, and accordingly held that the issue would need to proceed trial. *See id.*

Returning to Mr. Wong, defendants suggest that he will testify that (1) OST entered into an FAA MPA with CSG and acted within that agreement and the antecedent approval letter, and (2) that defendants did not require an MPA with the VA to provide mentoring assistance in support of CSG's VA contracts. See ECF 468 at 2. Both of these opinions use the FAA MPA to contest whether the claims defendants submitted were *actually* false, not whether defendants *believed* them to be false. Because the Court has already determined that the FAA MPA is irrelevant to whether or not defendants' claims were false, Mr. Wong's FAA MPA testimony could only be confusing and unhelpful to the jury.

In short, the FAA MPA could only be admissible as to defendants' subjective beliefs. Mr. Wong does not intend to speak to defendants' subjective beliefs, nor could he. "As courts in other districts have held, '[e]xpert witnesses are not permitted to testify as to the 'knowledge, motivations, intent, state of mind, or purposes' of others.'" *See United States v. DynCorp Int'l LLC*, No. 16-cv-1473 (PLF), 2024 WL 604923, at *14 (D.D.C. Jan. 25, 2024) (alteration in original) (citation omitted). Thus, Mr. Wong will be precluded from testifying. Accordingly, the Court will grant plaintiff's motion to exclude testimony of Mr. Wong. ECF No. 445.

### C. Plaintiff's Motion in Limine to Exclude Evidence of Civil Penalties, Treble Damages, Attorney Fees, Costs and Expense

Plaintiff moves to exclude any testimony about civil penalties or treble damages and other fees in this case. ECF No. 446. This motion is unopposed. Pretrial Stmt. 22. Plaintiff correctly argues that such information is irrelevant. ECF No. 446. Further, plaintiff cites several cases where courts—including this Court—have precluded testimony on these issues. ECF No. 446 (citing

*U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. 95-cv-1231 (RCL), 2007 WL 851868 (D.D.C. Mar. 14, 2007)). Accordingly, the Court will grant plaintiff's motion. ECF No. 446.

### D. Plaintiff's Motion in Limine to Exclude Reference to or Evidence of the United States Decision not to Intervene in this Action or its Absence as a Party at Trial

Plaintiff moves to exclude all evidence relating to or mentioning the government's decision not to intervene in this case. ECF No. 447. He argues that such evidence must be excluded as irrelevant and prejudicial under Fed. R. Evid., Rules 402 and 403. *Id.* The CSG Defendants do not oppose plaintiff's motion so long as plaintiff is "prohibited from stating that they represent or are acting on behalf of the United States." ECF No. 472. This is a strange position for the CSG Defendants to take given that they simultaneously argue that the United States "is a party, is represented or has a direct and substantial interest" in this case to get the benefit of a *Touhy* exception. ECF No. 476 at 5–6. Defendants want to have it both ways—the United States is entwined in this litigation but also divorced from this litigation based on whatever is most beneficial to defendants. As a result, the CSG Defendants' opposition is unpersuasive.

The OST Defendants oppose plaintiff's motion on two other bases. They argue that (1) evidence of the government's nonintervention is relevant, and (2) the Court could issue a limiting instruction to protect against any unfair prejudice from evidence of the government's declination to intervene. ECF No. 467. As to their first argument, defendants fail to cite any mandatory or analogous authorities that suggest that the government's declination to intervene is relevant here. *See id.* At best, defendants offer cases suggesting that the government's decision *to intervene* could be evidence of the materiality of claims in a case. However, as plaintiff argues, the inverse is not necessarily true. ECF 490 at 2 n.1. When the government declines to intervene in a FCA *qui tam* case, it may do so for any number of reasons unrelated to the underlying merits. *Id.* (collecting cases that affirm this principle). Indeed, in this very case, plaintiff argues that the government only

declined to intervene because it was "unable to complete its investigation before the intervention period expired." *Id.* at 4. As to the OST Defendants secondary argument about how a limiting instruction could cure any prejudice from evidence of the government's declination to intervene, defendants have failed to demonstrate that this evidence is relevant in the first place. The Court need not give a potentially ineffective limiting instruction to allow defendants to make irrelevant arguments to the jury. Accordingly, the Court will grant plaintiff's motion to exclude reference to or evidence of the United States' decision not to intervene or its absence as a party. ECF No. 447.

### E. Plaintiff's Motion in Limine to Exclude Evidence Related to the Federal Aviation Administration's Mentor-Protégé Program

Plaintiff has moved to exclude evidence of the FAA MPA. ECF No. 448. As explained above, the Court has already evaluated defendants' FAA MPA argument. The FAA MPA is irrelevant as to whether defendants' claims were false, but perhaps relevant—albeit unpersuasive—as to whether defendants had knowledge of that falsity. S.J. Op., at *8 n. 8, 9. Thus, defendants are permitted to discuss the FAA MPA, but only for the purpose of making arguments about their subjective beliefs. Plaintiff is free to counter that evidence on cross examination and with contemporaneous evidence. Defendants are not permitted to discuss the FAA MPA to argue that their claims were not false. The Court has already decided that the FAA MPA is irrelevant to that issue, so defendants may only make that argument with other evidence. *Id.* at *8 n. 8. Accordingly, the Court will grant in part and deny in part plaintiff's motion. More precisely, the Court will grant plaintiff's motion to preclude defendants from using the FAA MPA to contest the alleged falsity of their claims, however the Court will deny plaintiff's motion insofar as it would prevent defendants positing their subjective beliefs about what they were authorized or permitted to do on their VA contracts. Defendants are admonished from conflating these distinct issues at trial.

**F.  Plaintiff's Motion in Limine to Exclude Evidence Related to the Relators Work Performance, Character, Other Alleged Bad Acts, and Financial Interest.**

Plaintiff has moved to exclude evidence of his work performance, character, alleged bad acts, and financial interest. ECF No. 449. He argues that (1) such evidence is irrelevant under Rule 401, and (2) even if such evidence is relevant, its "potential for prejudice, confusion, or waste of time outweighs its probative value." Fed. R. Evid. 403; ECF No. 449. The thrust of plaintiff's motion is that any evidence of Mr. Scollick's work performance, character, bad acts, and financial interest could only be used to impeach his credibility, and because Mr. Scollick does not intend to testify in plaintiff's case in chief, that information is irrelevant. *Id.*

However, many defendants intend to call Scollick as an adverse witness. Pretrial Stmt. 12–15. The OST defendants argue that several aspects of Scollick's character are relevant to assess his credibility and bias including: "his work performance, prior drug use during the time frame of this case, his threats against a co-defendant, and his personal financial interest." ECF No. 469 at 1–2. The CSG defendants join those arguments and add that the Court should deny plaintiff's motion because Mr. Scollick's "personal knowledge and prior bad acts are relevant and probative of material issues in this case and may be used to impeach him." ECF No. 474. In particular, the CSG Defendants argue that Mr. Scollick's past acts are relevant to whether Mr. Gogia "knowingly submitted a false claim regarding his SDVOSB status" because Mr. Scollick held himself out as an "authority on government contracting and advised Gogia." *Id.* at 2.

Plaintiff, the OST defendants, and the CSG defendants all cite to Judge Cooper's decision in *United States ex rel. Landis v. Tailwind Sports Corp.* as instructive of how the Court should handle character evidence of this sort. 292 F. Supp. 3d 211 (D.D.C. 2017); ECF No. 492 at 5; ECF No. 469 at 2–3; ECF 474 at 6. In *Landis*, as here, the plaintiff "move[d] the Court to exclude references at trial to [the plaintiff-relator's] character or his motivation for filing this *qui tam*

action, including the fact that he stands to receive a share of any monetary award in this case." 292 F. Supp. 3d at 215. And in *Landis*, just as here, the plaintiff argued that he did not plan to be a witness in the case in chief, but the defendant sought to call him as a witness anyway. *See id.* Accordingly, Judge Cooper decided that "[w]hile the Court will not permit [defendant] to call [plaintiff-relator] solely for the purpose of attacking his character or highlighting his motivation for filing the *qui tam* action, it will allow [defendant] to call [plaintiff-relator] for other, non-character-related purposes." *Id.* Judge Cooper further explained that "[d]epending on the substance of [plaintiff's] testimony, the Court will allow [defendant] some opportunity to impeach him on grounds of bias or truthfulness." Finally, Judge Cooper warned that "[t]he Court will, however, carefully police the bounds of this cross-examination under Rule 403 and Rule 611." *Id.* With those caveats, Judge Cooper denied the plaintiff's motion to exclude references to the relator's character and motivation. *See id.* at 222.

Given plaintiff and defendants' mutual invocation of *Landis*, the Court will take a similar route in this case. Accordingly, the Court will deny plaintiff's motion. However, the Court will not permit defendants to call Mr. Scollick solely for the purpose of attacking his character or highlighting his financial interest in litigation. Instead, the Court will permit Scollick to be called for noncharacter purposes. Then, depending on the substance of Mr. Scollick's testimony, the Court may permit appropriate character evidence on a case-by-case basis to allow impeachment on grounds of bias or truthfulness. In doing so, the Court will "carefully police the bounds of this cross-examination under Rule 403 and Rule 611." *Id.* at 215. This approach balances any need the defendants may have for this sort of evidence with the potential prejudice to plaintiff.

### G. **Plaintiff's Motion in Limine to Exclude Evidence Related to Completion of the Set Aside Contracts.**

Plaintiff moves to exclude evidence of the defendants' completion of any set aside contracts. ECF No. 450. Plaintiff argues that this evidence should be excluded because this is a fraud-in-the-*inducement* case. *Id.* Thus, he argues, the *completion* of any fraudulently obtained contracts is irrelevant to both liability and damages. *Id.* at 2–3. The OST defendants disagree. ECF 470.[6] The Court agrees that this evidence could be used to mislead a jury into believing that defendants did not do anything wrong if they completed their contracts—even if those contracts were fraudulently obtained. Plaintiff is correct that this sort of "no harm, no foul" argument is inappropriate as to liability in this fraudulent inducement case. ECF No. 450 at 5. *See* S.J. Op. at *9 ("Plaintiff-relator is proceeding on a theory of fraudulent inducement—that the claims CSG submitted to the government for its work were false because CSG used fraud to enter the original contract—so he need only to prove two things: (1) that the fraud caused the government to enter into the contract; and (2) that the fraud was material."). Thus, the Court agrees with plaintiff that evidence of the completion of set aside contracts cannot be relevant to the issue of liability in this case. However, that evidence might be relevant to the issue of damages.

As the Court will discuss further below, damages in this case will be decided by the jury. In assessing damages, the jury will be tasked with determining "the difference between the value of the goods or services actually provided by the contractor and the value the goods or services

---

[6] The OST defendants argue that fraud-in-the-inducement is not a valid theory under the FCA, but cite no mandatory authority for that assertion. Instead, they cite a section from Judge Rao's concurrence in *United States ex rel. Cimino v. Int'l Bus. Machines Corp.* where she "question[d] whether the False Claims Act ("FCA") creates a cause of action for fraudulent inducement" and suggested that the question could be resolved in an appropriate case. 3 F.4th 412, 424, 426–427. This case, which has been pending for nearly a decade, is not the appropriate case, nor is it the appropriate time, on the eve of trial, for defendants to raise this argument. For almost four years, defendants have been aware that this Court would permit plaintiff to proceed on a fraudulent inducement theory. *See Scollick ex rel. United States v. Narula*, No. 14-CV-1339 (RCL), 2020 WL 6544734, at *10–11 (D.D.C. Nov. 6, 2020). In any event, in the very same concurrence, Judge Rao acknowledged that, notwithstanding her reservations, the D.C. Circuit has "recognized that a fraudulent inducement claim may exist under the FCA." *Cimino*, 3 F.4th at 426.

would have had to the government had they been delivered as promised." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1278 (D.C. Cir. 2010). Evidence that contracts that were allegedly fraudulently obtained were ultimately completed could be relevant to making this sort of determination as to damages. However, the Court is unpersuaded by any of defendants' other arguments as to the admissibility of this evidence.[7]

Accordingly, the Court will grant in part and deny in part plaintiff's motion to exclude evidence of completion of the set aside contracts. More specifically, the Court generally grants plaintiff's motion, but denies it insofar as it precludes defendants from offering evidence of the completion of set aside contracts in their arguments on damages. Defendants are admonished from using this evidence for any other purpose without first seeking approval from this Court. If necessary, the Court may issue an appropriate instruction to the jury on this issue.

## II.   DEFENDANTS' MOTIONS

Before the Court evaluates the merits of defendants' motions, it must say a word about the local rules of this Court. Civil Rule 7(m) of the Local Rules for the United States District Court for the District of Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

---

[7] The CSG defendants, for their part, primarily argue that granting plaintiff's motion would preclude them from offering evidence of "Gogia's ability to continue running [CSG] for approximately five years after OST and Parekh's initial involvement." ECF 475 at 2. They argue that that evidence of contract completion in that period demonstrates that CSG did not excessively rely on nonveteran management and that Gogia was always in control of CSG. *Id.* The Court is unconvinced by that argument, as the CSG Defendants have failed to clearly articulate how the completion of set aside contracts at any time is probative of who controlled CSG.

LCvR 7(m). This rule is not merely a formalistic procedural obstacle for the parties. The function of the rule is "to encourage informal resolution to such disputes, or at least to reduce or narrow the issues the Court will consider." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006). These purposes are particularly salient when trial is just around the corner. Further, as the Court recently explained, "[t]his Court has often denied motions for failure to comply with Rule 7(m) and its precursors" although "[u]nder the right circumstances, however, a nonconforming motion will not be denied." *Steele v. United States,* No. 14-cv-1523 (RCL), 2023 WL 6215790, at *3–4 (D.D.C. Sept. 25, 2023)(collecting cases).

All of Mr. Parekh's motions violate Civil Rule 7(m). *See* ECF Nos. 463, 464, 483. None of these motions contain the required certification and it is unclear whether Mr. Parekh performed the required consultation with opposing counsel. Mr. Parekh need not look far for an example of compliance with this rule, as each of the other parties' motions contains the certification required by Civil Rule 7(m). The Court could deny each of Mr. Parekh's motions on this basis alone, but the Court will nonetheless proceed to address their merits. However, for any of Mr. Parekh's motions that the Court denies, Mr. Parekh's failure to adhere to Civil Rule 7(m) provides additional justification for the Court's denial. Going forward, all parties are admonished to review and adhere to the rules of this Court.

## A. OST Defendants' Motion in Limine to Exclude Evidence of Liability Insurance

The OST Defendants have moved to exclude any reference by plaintiff to the existence of an insurance policy that covers the OST Defendants. ECF No. 451. They correctly argue that the Rules of Evidence do not allow evidence that a party is insured to be used to show that the person acted negligently or wrongfully. Fed. R. Evid. 411; ECF 451 at 2. The OST Defendants further argue that such evidence would cause unfair prejudice, mislead the jury, and confuse the issues.

*Id.* at 3. Plaintiff does not oppose this motion. Pretrial Stmt. 23. Accordingly, the motion will be granted. ECF No. 451.

### B. OST Defendants' Motions in Limine to Exclude Plaintiff-Relator's Experts

The OST Defendants and the CSG Defendants have moved to exclude the testimony of plaintiff's two experts: Christoph Mlinarchik and Ben Ward. ECF Nos. 452, 457.

Mr. Mlinarchik is the owner of a government contracting consulting firm and has authored several books on government contracts and federal procurement regulations. ECF No. 479 at 1–2. Plaintiff intends for Mr. Mlinarchik to testify to industry standards and the eligibility of CSG to participate in the SDVOSB program based on the level of ownership and control exerted by SDV Mr. Gogia as opposed to other non SDV individuals and non SDVOSB entities. ECF No. 479 at 2, 6. Plaintiff's other expert, Mr. Ward, was the Chief, Risk and Compliance at the Veterans Small Business Certification program within the SBA from 2012-2022. *Id.* at 2. While working there:

> Mr. Ward's responsibility was ensuring only eligible firms were listed in the program's contractor database, regularly reviewing entities' verification paperwork to determine eligibility within 38 C.F.R. Part 74's ownership and control requirements, and working closely with the VA OIG to identify firms potentially participating in the program fraudulently.

*Id.* Plaintiff intends for Mr. Ward to testify to the specific protocols of CVE when determining SDVOSB eligibility, the materials that CVE considers, CVE's reliance on self-certification, and how CVE would likely view certain facts relating to an entity's ownership and control. *Id.* Having provided the background for each of plaintiff's experts and the testimony that plaintiff intends to solicit, the Court now examines defendants' arguments for exclusion.

As to Mr. Mlinarchik, the OST Defendants argue that his testimony would improperly tell the jury what result to reach on two issues: (1) who was in control of CSG, and (2) whether defendants engaged in false or fraudulent conduct. ECF 452 at 7. As to the first matter, the OST Defendants take issue with Mr. Mlinarchik's determination that Gogia was not in control of CSG.

*Id.* at 7–11. In particular, Mr. Mlinarchik's opinion is that that CSG's structure was "inconsistent with the control requirements for SDVOSB." *Id.* at 2–3. The OST defendants argue that "Mr. Mlinarchik cannot state a legal position regarding what the control regulations state or whether an action is contrary to those regulations" because "[d]etermining the meaning of a . . . regulation . . . presents a classic legal question" and allowing opinion testimony on that issue would "usurp the role of the Court." *Id.* at 10 (quoting *Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*, No. 17-cv-36-LLA-MAU, 2024 WL 1076741, at *5 (D.D.C. Mar. 8, 2024).

The case that defendants quote is plainly inapposite. Magistrate Judge Upadhyaya's opinion in *Fed. Deposit Ins. Corp.* concerned an expert being proffered to opine on the meaning or ambiguity of a phrase in a regulation. 2024 WL 1076741 at *5. In that case, the parties had dueling interpretations of that particular phrase and resolving their disagreement formed the crux of the case. *Id.* That is not this case. These parties do not have differing views on the meaning of a phrase in a regulation. Moreover, Mr. Mlinarchik is not giving testimony for the purpose of regulatory interpretation. Instead, he intends to give his opinion on industry standards and whether CSG was an SDVOSB. ECF No. 479 at 2, 6. That is far from of the sort of rigorous expert regulatory *interpretation* that *Fed. Deposit Ins. Corp.* posits as inadmissible.

The OST defendants also take issue with Mr. Mlinarchik's opinion that, as a consequence of Mr. Gogia's lack of control of CSG, CSG "misrepresented itself" to the government as a SDVOSB, CSG was fraudulently certified as an SDVOSB, and this case is a "rent-a-vet" scheme. In arguing for the exclusion of this testimony, defendants suggest that this testimony consists of legal conclusions because it "tracks the language of the applicable statute" or "uses terms that "have specialized legal meaning that are more precise than the lay understanding of the term." ECF No. 452 at 7–8. Defendants are correct that testimony from Mr. Mlinarchik positing that CSG

"falsely or fraudulently represented or certified as SDVOSB" is plainly inadmissible. That testimony invades the province of the jury, and the Court will not permit plaintiff's expert to make those kinds of statutory arguments.

Other than that, however, defendants exaggerate the extent to which Mr. Mlinarchik's testimony tracks statues or uses specialized distinct legal terms. Defendants argue that "rent-a-vet" is such a term because the DOJ uses it in press releases when publicizing SDVOSB fraud cases. *Id.* at 10. However, the fact that the term appears in *press releases*, for public consumption, plainly cuts the other way. Moreover, even if the phrase "rent-a-vet" were a special legal term, defendants fail to demonstrate that the phrase has some legally precise meaning that is distinct from how it would be understood by a layperson.

In arguing for the exclusion Mr. Mlinarchik, the CSG defendants raise similar arguments to the OST Defendants and add that Mr. Mlinarchik's opinions on "industry standards" are truly just his own subjective beliefs and would be unhelpful to the jury. ECF No. 457 at 2–5. However, because the CSG defendants can interrogate the bases for Mr. Mlinarchik's understanding of industry standards on cross examination, this argument for the exclusion of Mr. Mlinarchik's testimony is unpersuasive. The CSG defendants also argue that both of plaintiff's experts should be excluded because they did not consider evidence of defendants' FAA MPA. *Id.* at 6–8. As this Court has explained, the FAA MPA is only potentially relevant to defendants' actual knowledge— which expert witnesses are not permitted to speculate about. *See United States v. DynCorp Int'l LLC*, No. 16-cv-1473 (PLF), 2024 WL 604923 (D.D.C. Jan. 25, 2024) ("As courts in other districts have held, expert witnesses are not permitted to testify as to the 'knowledge, motivations, intent, state of mind, or purposes' of others.") (quotation and alteration omitted). Thus, the fact that

plaintiff's experts did not discuss the FAA MPA or speculate about defendants' beliefs is irrelevant. Defendants' arguments for excluding the testimony of Mr. Mlinarchik are unpersuasive.

As to Mr. Ward, the OST and CSG defendants argue that Mr. Ward's testimony is speculative and unsupported. They argue that his opinions on "how CVE would likely have treated certain facts and factors with respect to CSG's eligibility for SDVOSB set-aside contract" is improper opinion on the "knowledge, motivation, or intent" of others. ECF No. 452 at 12. Defendants argue that "[e]ven with Mr. Ward's extensive experience, he cannot predict what someone else would have done when presented with information." *Id.*

In support of their argument to exclude Mr. Ward's testimony, defendants cite Judge Friedman's decision in *DynCorp*, 2024 WL 604923. In *DynCorp*, Judge Friedman excluded portions of an expert's opinions and testimony on the basis that the expert did not have knowledge of what specific agency officials had in their minds at a particular time. *Id.* at 14. On its face, *DynCorp* is inapposite; Mr. Ward is not being used to speculate about what specific individuals at CVE *knew*. Instead, based on his decade of experience at CVE, he is being used to provide testimony on CVE protocols, eligibility determinations, reliance on self-certification, and provide his opinion on how, based on those factors, CVE as an entity *would likely view* certain information. ECF No. 479 at 2.

Defendants also focus on a quote from *DynCorp* that says, "an expert may not speculate about what other individuals knew *or would have done* with certain information." 2024 WL 604923, *14 (citing *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, Civil Action No. 19-1756, 2022 WL 4547022, at *6 (D. Minn. Sept. 29, 2022) (emphasis added). However, defendants overstate the persuasive force of the emphasized portion of that quote, which, in any event, was not material to the decision in *DynCorp*. *Id.* The "would have done" language in that

quote originates from a district court decision from Minnesota where that court excluded the testimony of one physician who sought to testify as to what other physicians knew or would have done with certain information. *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1069 (D. Minn. 2007). The rationale in that case was that a physician's qualifications do not render her qualified to testify about what all doctors generally consider in making prescription decisions. *Id.* However, precluding one physician from speculating about what other physicians *would do* with certain information is plainly disanalogous to Mr. Ward's opinions about how CVE *might view* certain facts based on his decade working there. The former is impermissible speculation, the latter is not.

Thus, defendants have failed to demonstrate that Mr. Ward's expert testimony is improper. Given his decade of experience with the CVE, including during the time that defendants are alleged to have made false claims, Mr. Ward can testify as to CVE protocols and practices and how those protocols and practices are applied. Defendants are free to interrogate the bases for Mr. Ward's beliefs about CVE on cross examination. Moreover, defendants remain free to object at trial to any testimony from Mr. Ward that they believe crosses over into improper speculation.

Accordingly, the Court will deny the OST and CSG defendants' motions in limine to exclude the testimony of plaintiff's experts. ECF Nos. 452, 457.

### C. OST Defendants' Motion in Limine to Exclude Plaintiff from Seeking Full Contract Damages

The OST Defendants have moved to exclude plaintiff from seeking full contract damages. ECF No. 453. They argue that the proper measure of damages in this case is not the total value of the allegedly fraudulently obtained contracts—as plaintiff suggests—but rather the benefit of the bargain to the government. ECF No. 453. Defendants acknowledge that this Court already held, at the pleading stage, that plaintiff had "sufficiently alleged that the government received nothing of

value here." Mot. to Amend Complaint Op., at *16. Critically, this Court explained how that was
true even though the government may not have lost any money by contracting with defendants:

> Finally, although the government may not have experienced a financial loss, it still
> experienced a loss according to Circuit precedent, which states that "where the
> defendant fraudulently sought payments for participating in programs designed to
> benefit third-parties rather than the government itself, the government can easily
> establish that it received nothing of value from the defendant and that all payments
> made are therefore recoverable as damages." *United States v. Sci. Applications Int'l
> Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010). The intended third party beneficiaries
> here are actual SDVOSBs who are eligible for SDVOSB set aside contracts. The
> Amended Complaint alleges that CSG and Citibuilders—who did not qualify as
> SDVOSBs—sought payments for contracts awarded pursuant to this SDVOSB set
> aside program. Thus, it has sufficiently alleged that the government received
> nothing of value here.

*Id.* However, undeterred by that ruling, defendants continue to maintain that plaintiff
cannot seek full contract damages in this case because the allegedly fraudulently obtained contracts
were completed to the satisfaction of the government. ECF No. 453.

The leading case on this issue is the D.C. Circuit's decision in *United States v. Sci.
Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) [hereinafter "*SAIC*"]. Defendants,
plaintiff, and this Court have cited *SAIC* as instructive of the proper measure of damages in this
case. ECF No. 453 at 12; ECF No. 447 at 8; Mot. to Amend Complaint Op., at *16. In *SAIC*, the
defendant argued that the government was not entitled to damages notwithstanding defendant's
false claim because defendants "'delivered . . . all the work product that it promised to deliver
under its [agency] contracts' and because reviewing [agency] officials 'uniformly praised' that
work product." *Id.* at 1278. However, the D.C. Circuit rejected defendants' theory of damages, and
articulated a few principles courts must consider in determining damages in FCA cases. *See id.*

First, the Circuit held that "[i]n calculating FCA damages, the fact-finder seeks to set an
award that puts the government in the same position as it would have been if the defendant's claims
had not been false." *Id.* The Circuit went on to explain that "[i]n a case where the defendant agreed

to provide goods or services to the government, the proper measure of damages is the difference between the value of the goods or services actually provided by the contractor and the value the goods or services would have had to the government had they been delivered as promised." *Id.* at 1278. Critically, however, the Circuit made clear that "the government will sometimes be able to recover the full value of payments made to the defendant, but only where the government proves that it received no value from the product delivered." *Id.* at 1279. The Circuit then provided an example of such a circumstance in explaining that "[i]n some cases, such as where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages." *Id.*

Accordingly, the Circuit then remanded the case back to the district court saying that "the district court should instruct the jury to calculate the government's damages by determining the amount of money the government paid due to [defendant's] false claims over and above what the services [defendant] actually delivered were worth to the government." *Id.* at 1280. Defendant was free to argue that there were no damages because the requested work was completed, and the government was free to argue that defendant's false claims made it such that the government received no value. *See id.* at 1279–80. The Court will take a similar approach here.

Given the D.C. Circuit's guidance in *SAIC*, the Court considers it premature to determine the issue of damages in favor of either party. Defendants might be correct that there was no damage to the government. But proving that would require defendants to establish that there is no difference between the value of what they promised the government and the value of what they provided to the government in each of the contracts at issue. However, even on this theory of damages, plaintiff could argue that damages are nonetheless warranted because some part of the

"value" of performance of an SDVOSB set aside contracts is that it will be performed by a service-disabled veteran owned small business. Plaintiff could even argue that defendants provided no "value" to the government because the contracts that defendant allegedly fraudulently obtained were primarily intended to benefit SDVOSB third parties.

In short, the Circuit's decision in *SAIC* requires the issue of damages to be left to the jury.[8] And the jury will assess damages by determining the difference between the value of what defendants provided to the government and the value of what the government was promised. The parties may use a variety of different types of evidence to persuade the jury on this issue including but not limited to: the dollar value of the contracts, the intended beneficiaries of the contracts, the government's satisfaction with completion of the contracts, and any intangible damage stemming from the SDVOSB status of the entity that performed the contracts. In evaluating this evidence, the jury will be free to determine that there are no damages, as defendants suggest, or that there are damages equal to the full value of the contracts, as plaintiff suggests—or anything in between. Both parties can present their evidence of the damages in this case, but neither party should make legal arguments. The Court will instruct the jury as to the applicable law. Accordingly, the Court will deny defendants' motion to exclude plaintiff from seeking full contract damages. ECF No. 453.

---

[8] The Court acknowledges that it may be difficult for the jury to determine damages in this case. However, in *SAIC*, the Circuit left that issue to the jury notwithstanding similar difficulties. *SAIC*, 626 F.3d at 1280 ("We recognize the difficulty the jury will face in calculating the value of services tainted by potential conflict.").

**D. Defendants' Motions in Limine to Exclude Co-Defendant Melvin Goodweather's Settlement or Alternatively for Limiting Instruction and for Limiting Instruction Regarding Unrelated Conspiracy Allegation**

The OST Defendants move to preclude plaintiff from referencing their former co-defendant Melvin Goodweather's settlement with the government, or alternatively for the Court to provide a limiting instruction if such evidence is permitted. ECF No. 454. Defendants also seek a limiting instruction as to conspiracy evidence. *Id.* Plaintiff opposes. Pretrial Stmt. 22. Mr. Parekh also moves to exclude evidence of the settlement. ECF No. 464. Plaintiff opposes. Pretrial Stmt. 22.

Taking these in reverse order, Mr. Parekh's short pro se motion argues that the admission of the settlement agreement with Mr. Goodweather is prohibited under Rules 408, 403, 404, and 801 of the Federal Rules of Evidence. ECF No. 464. That motion, which contains little engagement with the various potentially applicable exceptions to each of those rules is unpersuasive. *See id.* Moreover, Mr. Parekh's motion fails to acknowledge that plaintiff does not intend to introduce the settlement agreement into evidence unless there is an applicable exception to the Federal Rules of Evidence.[9] *See* ECF No. 478. Thus, the Court will deny Mr. Parekh's motion. ECF No. 464.

As for the OST Defendants, the underlying reason that they seek to preclude evidence of the settlement agreement is that the settlement agreement contains several damaging statements related to Mr. Parekh's participation in "the Citibuilders conspiracy," which they argue is separate from "the CSG Conspiracy." ECF No. 454 at 2–3. The OST Defendants acknowledge that plaintiff has not expressed any intention to introduce evidence of the settlement agreement, but nonetheless argue that the evidence of the settlement agreement could violate Rule 408 of the Federal Rules of Evidence. *Id.* at 5. Under that Rule, plaintiff cannot offer settlement evidence to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

---

[9] The Court suspects that Mr. Parekh's failure to acknowledge this is linked to his violation of Civil Rule 7(m).

contradiction." Fed. R. Evid. 408. However, the Rules permit plaintiff to introduce such evidence for several other purposes including to prove a witness's bias or prejudice. *Id.* Because plaintiff does not intend to introduce the settlement agreement, and because plaintiff is already required comply with Rule 408, the OST defendants' motion is unnecessary. If plaintiff seeks to introduce evidence of the settlement agreement at trial, defendants are free to object or request a limiting instruction at that time.

The OST Defendants also seek a limiting instruction as to the two conspiracies in this case: "the Citibuilders conspiracy" and the "the CSG Conspiracy." ECF No. 454 at 2. The OST Defendants argue that the two conspiracies are totally separate and do not overlap except as to Mr. Parekh's involvement. *Id.* at 3. Critically, plaintiff contests this characterization. ECF No. 478 at 2. The OST Defendants further argue that the Mr. Parekh's participation in both conspiracies could have a spillover effect and prejudice the jury. *Id.* at 8–9. Thus, the OST Defendants request the following limiting instruction:

> In this case there are multiple conspiracies alleged in this case – one called the CSG conspiracy allegedly involving Defendants OST, Narula, Madan, CSG, Gogia and Parekh, and a second conspiracy called the Citibuilders conspiracy allegedly involving Defendant Parekh and Melvin Goodweather, who is not a current defendant in this case.
>
> Each conspiracy must be analyzed individually and you cannot impute evidence from one conspiracy to meet Plaintiff-Relator's burden of proof regarding the second conspiracy. That is, CSG conspiracy evidence shall be considered only against the alleged defendants in that conspiracy, and the Citibuilders conspiracy evidence shall be considered only against the defendants in that conspiracy.

Pretrial Stmt. 489-6 at 15. However, plaintiff argues that these two conspiracies were not as separate as defendants make them out to be, and further argues that a limiting instruction "may cause the jury to separate the two fraud schemes and interfere with inferences that may properly be drawn from the second fraud scheme." ECF No. 478 at 3. Thus, plaintiff requests that in lieu of

a limiting instruction, the Court instead provide a jury instruction at the close of the evidentiary record. *Id.* In light of the parties' differing perspectives on the overlap of the two alleged conspiracies, the Court will reject defendants' invitation to anticipatorily instruct the jury as to how they should view the conspiracy evidence in this case. If it appears necessary at trial, the Court can issue a limiting instruction or a final jury instruction at the close of evidence. Accordingly, the Court will deny the OST Defendants' motion. ECF No. 454.

### E. OST Defendants' Motion to Adopt Motions in Limine Filed by Codefendants

The OST Defendants have filed a motion to adopt motions in limine filed by their co-defendants to the extent such motions and requested relief impacts the OST Defendants. ECF No. 455. This motion for joinder is unopposed. Pretrial Stmt. 23. Accordingly, the Court will grant the motion. ECF No. 455.

### F. OST Defendants' Motion in Limine Exclude Witness Opinions Regarding Fraud and Illegality

The CSG Defendants move in limine to prevent plaintiff from introducing witness opinion testimony on fraud and illegality. ECF No. 456. The CSG Defendants anticipate that plaintiff, or one of plaintiff's witnesses, will testify that defendants' acts were fraudulent or illegal. *Id.* at 1. The CSG Defendants seek to preclude such testimony on the basis that its admission would go to an ultimate issue in the case and thus run afoul of Rule 701 and Rule 403. ECF No. 456. Plaintiff does not oppose this motion. Pretrial Stmt. 13. Accordingly, the Court will grant defendants' motion to exclude witness opinions regarding fraud and illegality. ECF No. 456. However, the Court's grant of this motion does not preclude any witnesses from testifying as to facts that might support an inference of fraud or illegality.

### G. CSG Defendants' Motion for a Jury Questionnaire

The CSG Defendants move for a voir dire jury questionnaire. ECF No. 458 at 1. Plaintiff opposes the use of the jury questionnaire, argues that defendants' proposed jury questionnaire was untimely, and disagrees with the inclusion of certain questions in questionnaire. ECF No. 465. In light of the parties' conflicting views on the questionnaire and what its contents should be, the Court will instead conduct voir dire in the usual manner the Court is accustomed to. Accordingly, the Court will deny the CSG defendants' motion for a jury questionnaire. ECF No. 458.

### H. CSG Defendants Motion to Exclude Evidence Regarding Payment of CSG, LLC's Attorneys Fees

The CSG Defendants move to exclude evidence regarding payment of CSG's attorneys fees. ECF No. 459. That motion is unopposed. Pretrial Stmt. 24. Accordingly, the Court will grant the CSG Defendants' motion. ECF No. 459.

### I. CSG Defendants Motion in Limine to Examine Plaintiff's Chart and Exhibits

The CSG Defendants move in limine to examine Plaintiff Andrew Scollick's charts and exhibits. ECF No. 460. In particular, the CSG Defendants request the opportunity to review and reserve their objections to any summary evidence that plaintiff intends to use at trial under Fed. R. Evid. 1006, as well as any illustrative aids pursuant to Fed. R. Evid. 611(a). *Id.* at 2. Plaintiff joins that motion. ECF No.66; Pretrial Stmt. 24. Plaintiff agrees with defendants' motion and requests that it be deemed mutually applicable to all parties. ECF No. 466. Accordingly, the Court will grant the CSG Defendants' motion to examine plaintiff's charts and exhibits. ECF No. 460. All parties should be aware that the obligation to exchange summary evidence is mutual.

### J. CSG Defendants Motion Joining Co-Defendants Motions in Limine

The CSG Defendants have filed a motion in limine to join motions filed by their co-defendants to the extent that the relief sought in those motion impacts the CSG Defendants. ECF

No. 461. This motion for joinder is unopposed. Pretrial Stmt. 24. Accordingly, the Court will grant it. ECF No. 461.

**K. Mr. Parekh's Motion to Join the OST Defendants' Motions to Exclude Plaintiff from Seeking full Contract Damages and to Exclude Plaintiff's Experts.**

Mr. Parekh has filed a pro se motion to join the OST Defendants' motions to exclude plaintiff from seeking full contract damages, ECF No. 453, and to exclude plaintiff's experts, ECF No. 452. ECF No. 463. That motion appears to be unopposed. *See* Pretrial Stmt. 24. Since Mr. Parekh's motion for joinder is unopposed, the Court will grant it. ECF No. 463.

**L. Mr. Parekh's Motion for Joinder**

Mr. Parekh has filed a pro se motion to "align with the Opposition Motion in Limine filed by [OST Defendants] to contest Plaintiff-Relator's motion in limine aimed at excluding Defendants' expert Robb Wong." ECF No. 483. Construing this motion liberally, it is an unopposed motion for joinder of the OST defendants' opposition to plaintiff's motion at ECF No. 445. Since Mr. Parekh's motion for joinder is unopposed, the Court will grant it. ECF No. 483.

**M. Motion for Scheduling Order**

Defendants filed a consent motion for a scheduling order about a year and a half ago. ECF No. 410. Given the stage of this case, that motion is no longer necessary. Accordingly, the Court will deny that motion as moot. ECF No. 410.

### III.   CONCLUSION

For the foregoing reasons:

Plaintiff's Motion in Limine [444] to Exclude Testimony of Defendants' Expert Thomas J. McGrath will be **DENIED.**

Plaintiff's Motion in Limine [445] to Exclude Testimony of Defendants' Expert Robb Wong will be **GRANTED.**

Plaintiff's Motion in Limine [446] to Exclude Evidence of Civil Penalties, Treble Damages, Attorneys Fees, Costs and Expenses will be **GRANTED.**

Plaintiff's Motion in Limine [447] to Exclude Reference to or Evidence of the United States Decision not to Intervene in this Action or its Absence as a Party at Trial will be **GRANTED.**

Plaintiff's Motion in Limine [448] to Exclude Evidence Related to the Federal Aviation Administration's Mentor-Protégé Program will be **GRANTED** insofar as it precludes defendants from using that evidence to argue about whether or not their claims were in fact false, but **DENIED** insofar as it would prevent defendants from using that that evidence to argue about their actual knowledge of the alleged falsity of their claims

Plaintiff's Motion in Limine [449] to Exclude Evidence of Related to the Relators Work Performance, Character, Alleged Bad Acts, and Financial Interest will be **DENIED.**

Defendants' Motion in Limine [450] to Exclude Evidence Related to Completion of the Set Aside Contracts will be generally **GRANTED** but **DENIED** insofar as it precludes defendants from offering evidence of the completion of set aside contracts to argue damages.

OST Defendants' Motion in Limine [451] to Exclude Evidence of Liability Insurance will be **GRANTED.**

OST Defendants Motion in Limine [452] to Exclude Plaintiff-Relator's Experts will be **DENIED.**

OST Defendants' Motion in Limine [453] to Exclude Plaintiff from Seeking full Contract Damages will be **DENIED.**

OST Defendants Motion in Limine [454] to Exclude Co-Defendant Melvin Goodweather's Settlement or Alternatively for Limiting Instruction and for Limiting Instruction Regarding Unrelated Conspiracy Allegation will be **DENIED.**

OST Defendants' Motion [455] to Adopt Co-Defendants' Motions in Limine will be **GRANTED**.

CSG Defendants Motion in Limine [456] to Exclude Witness Opinions Regarding Fraud and Illegality will be **GRANTED**.

CSG Defendants Motion in Limine [457] to Exclude Testimony of Plaintiff's Expert Witnesses will be **DENIED.**

CSG Defendants Motion in Limine [458] for a Jury Questionnaire will be **DENIED.**

CSG Defendants Motion in Limine [459] to Exclude Evidence Regarding Payment of CSG, LLC's Attorneys Fees will be **GRANTED**.

CSG Defendants Motion in Limine [460] to Examine Plaintiff's Charts and Exhibits will be **GRANTED**.

CSG Defendants Motion in Limine [461] to Join Co-Defendants' Motions in Limine will be **GRANTED**.

Neil Parekh's Motion [463] to Join the OST Defendants' Motions to Exclude Plaintiff from Seeking full Contract Damages and to Exclude Plaintiff's Experts will be **GRANTED**.

Neil Parekh's Motion in Limine [464] to Exclude Dismissed Co-Defendant Melvin GoodWeather's Settlement Agreement From Evidence Trial will be **DENIED**.

Neil Parekh's Motion [483] for Joinder will be **GRANTED**.

The Consent Motion [410] for Scheduling Order will be **DENIED AS MOOT**.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: May 7, 2024

Royce C. Lamberth
United States District Judge

31