**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ANDREW SCOLLICK**, *ex rel United States of America*, | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:14-cv-1339-RCL** |
| **VIJAY NARULA**, *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OPINION & ORDER

Over a decade ago, Plaintiff-Relator Andrew Scollick brought this case alleging false claims for payments submitted to the U.S. government under the Department of Veterans' Affairs service-disabled veteran-owned small business contract set aside program. Compl. at 10–11, ECF No. 1. On the eve of trial, the parties confirmed that they had reached a settlement, and the Court vacated the trial date upon their request. Before the Court now is Plaintiff's motion to enforce the settlement. Mot. to Enforce, ECF No. 526. For the reasons that follow, the Court **GRANTS** the motion and **ORDERS** the parties to file a joint status report on any continuing need for a status conference on this matter.

## I.   BACKGROUND

The Court assumes familiarity with the underlying facts of this case, which is detailed at length in several opinions. *See, e.g.*, *United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26 (D.D.C. 2016); *United States ex rel. Scollick v. Narula*, No. 14-cv-1339, 2017 WL 3268857 (D.D.C. July 31, 2017); *Scollick ex rel. United States v. Narula*, No. 14-cv-1339, 2022 WL 3020936 (D.D.C. July 29, 2022); *Scollick ex rel. United States v. Narula*, No. 14-cv-1339, 2024

1

WL 2017132 (D.D.C. May 7, 2024).  The following recites only those facts relevant to Plaintiff's motion to enforce the settlement.

On May 13, 2024, this Court vacated the initial trial date after all interested parties relayed their agreement in principle for settlement.  Order Continuing Trial, ECF No. 520.  Defendants circulated a draft settlement to Plaintiff on July 12, 2024, with their permission for it to be sent to the United States Department of Justice ("DOJ") for approval pursuant to 31 U.S.C. § 3730(b)(1). *See* Mot. to Enforce at 2, ECF No. 526; Opp'n to Mot. to Enforce at 1, ECF No. 528.  Plaintiff accepted the DOJ's initial changes to the settlement agreement and recirculated to all parties on December 17, 2024.  Exhibit 2 (Email Correspondences) at 11, ECF No. 526-4.  After a final round of edits by Defendants, DOJ approved and recirculated on January 9, 2025, with a follow up confirmation on February 10, 2025, and Plaintiff returned the agreement with his signature on February 19, 2025.  *Id.* at 5–10.

But on March 1, 2025, the OST Defendants' counsel relayed his clients' failure to sign, stating that changing conditions with respect to government contracting under the new administration drew their full attention.  *Id.* at 2–3.  On March 6, 2025, Plaintiff moved for a status hearing, which was held on April 14, 2025.  ECF Nos. 524–25.  Three days before that hearing, Plaintiff filed the motion to enforce the settlement agreement along with a request to seek leave to file for attorney's fees as sanctions.  Pl.'s Mo. to Enforce, ECF No. 526.  On April 25, 2025, the OST Defendants filed their opposition to both motions primarily on the grounds of changed business conditions.  OST Opp'n, ECF No. 528.  Plaintiff filed his reply on May 2, 2025, reiterating his desire for this Court to summarily enforce the settlement agreement as executed in February, along with a request to seek additional sanctions for the time spent seeking enforcement. Pl.'s Reply, ECF No. 530.

While the remaining defendants have indicated a willingness to proceed with the settlement, they have deferred to the OST Defendants in their respective opposition motions. *See* CSG Defendants Opp'n to Mot. to Enforce, ECF No. 527 ("CSG Defendants have already agreed to and do agree to the terms of the Global Settlement Agreement . . . but understand that the purpose of the Agreement is to effectuate a global settlement of this lawsuit among all parties."); Parekh Defendants Opp'n to Mot. to Enforce, ECF No. 529 ("To be clear, Parekh has agreed to the terms of the Global Settlement Agreement . . . but understands that his portion of the Global Settlement Agreement is dependent on all of the other Defendants' commitment to and execution of the Agreement.").

The OST Defendants subsequently moved for leave to file sur-reply on May 9, 2025, attaching a declaration from the founder and Chairman of the Board of OST, Vijay Narula. *See* Mot. for Leave, ECF No. 531; Decl. of Vijay Narula, ECF No. 531-1. Plaintiff opposed this motion, ECF No. 532, and has since filed an unopposed motion for a status conference to discuss possible discovery regarding the factual basis for the OST Defendants' refusal to comply with the terms of the settlement, ECF No. 536.

## II.    LEGAL STANDARDS

"By filing a motion to enforce a settlement agreement, a party seeks to have the court bind the other party to an alleged agreement to settle claims." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 76 (D.D.C. 2014). "It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them." *Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Solutions,* No. 02-cv-1987, 2007 WL 1794105, at *3 (D.D.C. June 19, 2007).

"The moving party bears the burden of proving by clear and convincing evidence that the parties reached a binding agreement." *Demissie v. Starbucks Corp. Off. & Headquarters*, 118 F.

Supp. 3d 29, 34 (D.D.C. 2015).   But when a party raises impracticability as a defense to performance of a binding agreement, that party carries the burden of proof.  *See Island Dev. Corp. v. D.C.*, 933 A.2d 340, 353 (D.C. 2007).

### III.   DISCUSSION

Plaintiff moves to enforce the settlement agreement and seeks sanctions for the delay that the OST Defendants have caused.  Before taking these issues in turn, the Court first addresses the OST Defendants' motion for leave to file a sur-reply.

### A. Sur-Reply

"The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the Court."  *Clendenny v. the Architect of the Capitol*, 236 F. Supp. 3d 11, 17 n.2 (D.D.C. 2017) (cleaned up) (quoting *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011)).  Sur-replies may be appropriate when "the movant raises arguments for the first time in his reply to the non-movant's opposition."  *Imapizza, LLC v. At Pizza Ltd.*, No. 17-cv-2327, 2018 WL 6619852, at *1 (D.D.C. July 26, 2018) (quoting *Ying Qing Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014)).  But absent special circumstances, they are "are generally disfavored."  *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 93 (D.D.C. 2017).

The OST Defendants argue that Plaintiff raised new facts in his reply to their opposition, and that they should be able to contest those representations in a sur-reply.  *See* Mot. for Leave, ECF No. 531.  Their proposed sur-reply takes the form of a declaration by one of the OST Defendants, Vijay Narula, the founder and Chairman of the Board of OST, who counters factual claims made in Plaintiff's reply about the financial state of the company.  *See* Decl. of Vijay Narula, ECF No. 531-1.  Plaintiff points out that the OST Defendants raised the factual issue of OST's financial instability—but then failed to provide any evidence in support of this assertion— in their opposition.  Opp'n to Mot. for Leave, ECF No. 532 at 8 ("Defendants failed to offer any

4

evidence whatsoever when their opposition was due to support their impracticability defense or their alleged inability to pay under the agreed upon settlement agreement.").

The Court agrees that it is not manifestly unfair to deny the OST Defendants an opportunity to respond to Plaintiff's assertions regarding OST's financial position when the OST Defendants forewent the opportunity to provide the Court with evidence of their asserted inability to pay in their opposition. And in any case, because the sur-reply supplements only the factual basis of the impracticability defense, considering it would not alter the Court's analysis since the defense fails as a matter of law, as discussed below.

### B. Motion to Enforce the Settlement Agreement

The OST Defendants oppose enforcement on the grounds of the impracticability defense without directly contesting contract formation. The Court nevertheless begins by assuring itself that the parties came to a binding agreement before turning to the asserted defense.

### 1. Contract Formation

Settlement agreements are subject to general principles of contract law regarding their formation and enforcement. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 188 (D.C. 2009). To enforce a contract under District of Columbia law, the court must find that there was "(1) an agreement to all material terms, and (2) intention of the parties to be bound." *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005) (quotation omitted).

Generally, a signed written agreement is not necessary for contract formation when there is an objectively manifested intent to be bound. *See Makins v. D.C.*, 277 F.3d 544, 547 (D.C. Cir. 2002) ("The [parties] agreed upon essential terms. That [one of the parties] refused to sign the settlement papers is therefore not conclusive . . . ."). Moreover, communications between the parties may reinforce their mutual intent to be bound. *See, e.g., Dyer v. Bilaal*, 983 A.2d 349,

357–59 (D.C. 2009) (concluding emails between the parties that communicated terms and mutual agreement displayed intent to be bound).

Here, the parties represented their mutual agreement in principle to settle in advance of trial, and then worked with DOJ to get its approval. Multiple rounds of edits took place within the government, culminating with DOJ accepting defense counsel's final edits on January 9, 2025. *See* Exhibit 2 (Email Correspondences) at 7–8, ECF No. 526-1. On the January 10, 2025, the OST Defendants thanked DOJ counsel for resolving all outstanding questions and stated that they "ha[d] no objections." *Id.* at 7.

The OST Defendants do not deny that the settlement agreement is a complete representation of the agreed-upon terms. *See* Opp'n to Mot. to Enforce at 1, ECF No. 528 (stating in their opposition that "the OST Defendants do not contest that they were fully prepared to execute the agreement" when they initially circulated it to DOJ and the plaintiff in July 2024). Nor do they argue that their signature is necessary to enforce the settlement agreement as a matter of contract law. Rather than contesting formation, the OST Defendants oppose summary enforcement by asserting an impracticability defense to performance of the settlement agreement. It is to this issue that the Court now turns.

### 2. Impracticability Defense

DC law recognizes commercial impracticability as a defense to performance when there is (1) the unexpected occurrence of an intervening act; (2) the risk of the unexpected occurrence was not allocated by agreement or custom; and (3) the occurrence made performance impracticable. *See Transatlantic Financing Corp. v. United States*, 363 F.2d 312, 315 (D.C. Cir. 1966). Here, the OST Defendants' argument fumbles at the second and third step.

A promisor's misplaced reliance on third-party funding does not "convert financial inability to perform into an objective impossibility" since the promisor is generally viewed as having assumed the risk that its source of funding might run dry. *See E. Cap. View Cmty. Dev. Corp. v. Robinson* ("*E. Cap. View*"), 941 A.2d 1036, 1041–42 (D.C. 2008). Put differently, the impracticability defense under D.C. law rarely recognizes an inability-to-pay argument because the "anticipation of funding from one source does not alter the party's duty to perform." *Id.* And while it is true that a contractual duty may be discharged on the grounds of impracticability when the letter of the law prohibits performance, *see Wm. P. Lipscomb Co. v. Kaldenbach & Wysong*, 187 A.2d 124, 125–26 (D.C. 1962), the OST Defendants do not cite authority suggesting that performance becomes impracticable simply because a party loses the government as its primary client.

Simply put, the unexpected loss of funding from the government does not excuse the OST Defendants' performance of the contract even if they were completely beholden to this single source of revenue and this was known to both parties at the time of the agreement. *See E. Cap. View*, 941 A.2d at 1041–42 ("[E]ven if the promisee knows that the promisor's sole source of funding comes from a third-party and that promisor can no longer obtain funds from the third-party, the promisor is still obligated." (quotation omitted)). Even the threat of "insolvency is unlikely to excuse performance." *Id.*

Although the government's action may have dramatically reduced the OST Defendants' revenue, the executive orders did not prohibit by law performance of the settlement agreement. And since the OST Defendants cannot meet the third prong of the test for impracticability as a

matter of law, the Court need not consider the factual basis for their representations relating to OST's financial health.[1]

### C.  Motion for Sanctions

Plaintiff asks the Court to grant him leave to seek fees and costs as a sanction against the OST Defendants whose actions necessitated Plaintiffs' enforcement motion.  ECF No. 526 at 11. A district court has the inherent authority to impose sanctions on a party to protect the Court's "institutional integrity and to guard against abuses of the judicial process" upon finding by clear and convincing evidence that a party acted in bad faith.  *Shephard v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

While the OST Defendants' arguments against enforcement of the settlement fail, the Court finds that their refusal to sign the agreement was not an act of bad faith.  It is true that signing the agreement is a mutual obligation of the parties, and the timeline contemplated in the agreement uses the date of the final signatory as the triggering event for payments to the Plaintiff and the government.   Settlement Agreement at ¶ 26.   But while the OST Defendants may have misunderstood the merits of their impracticability defense, they made the argument in a timely response to the motion to enforce, which Plaintiff filed after only a few weeks of delay.  Unlike the cases cited by Plaintiff, nothing in this record indicates the OST Defendants "used every trick up [their] sleeve" to evade the settlement agreement, such as ignoring an adverse ruling requiring them to sign the agreement or misrepresenting the situation to this Court.  *See, e.g.*, *Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1251–55, 1258 (10th Cir. 2015) (emphasis omitted).  The Court will therefore deny Plaintiffs' request for sanctions.

---

[1] The OST Defendants request, in the alternative to denying the Plaintiff's motion to enforce, that the Court extend the execution of the agreement 180 days.  *See* ECF No. 528 at 2.  Since Plaintiff filed his motion to enforce the settlement agreement over a year ago, the Court denies this request.  *See* ECF No. 526.

## IV.   CONCLUSION

For the reasons given above, the OST Defendants' motion for leave to file a sur-reply is **DENIED**, Plaintiff's motion to enforce the settlement agreement is **GRANTED**, and Plaintiff's motion for sanctions is **DENIED**.  It is further

**ORDERED** that the partially executed Settlement Agreement dated February 10, 2025 is accepted as the final, fully enforceable settlement agreement in this matter; and it is further

**ORDERED** that the defendants shall sign the Settlement Agreement forthwith and the parties shall promptly implement the terms of the agreement; and it is further

**ORDERED** that the Court shall retain jurisdiction over this matter for purposes of enforcement pursuant to the terms of the Settlement Agreement, and dismissal of this action in accordance with 31 U.S.C. § 3730(b)(1) shall be delayed until after the parties file a joint stipulation of dismissal until the parties report that all of the payments required by the Settlement Agreement have been made; and it is further

**ORDERED** that the parties file a joint status report within the next 30 days advising the Court of any need for a status conference to discuss the necessity of further enforcement proceedings.

**IT IS SO ORDERED.**

Date:   _4-27-26_                                    _Zyce C. Smith_
                                                     Royce C. Lamberth
                                                     United States District Judge

9